UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No. 3:13-MJ-1087-JRK

FREDERIC CILINS,
        Defendant.
_____/

GOVERNMENT'S RESPONSE TO DEFENSE EMAIL
CONCERNING PROPERTY TO BE PLEDGED AS COLLATERAL
BY DEFENDANT AND HIS ASSOCIATES

      The Government respectfully submits this pleading to bring to the Court's attention information related to the defendant's electronic mail late Friday afternoon, submitted herewith as Exhibit 1, reporting that unsigned affidavits previously submitted by the defendant were "inaccurate." Not only was the information described in those affidavits not accurate, but the facts that were covered up by that misinformation are highly relevant to the propriety of using those properties as security for a bond. Contrary to the defendant's draft affidavits, which claimed that the defendant was the sole owner of two limited liability companies that owned property that was proposed as security for a bond, the defendant in fact co-owns each of those properties with two individuals, one of whom signed one of the contracts that the defendant has been indicted for trying to destroy and later wired money to the CW and the other of whom the defendant kept updated in real time on the defendant's efforts to obstruct justice—both matters that relate to the defendant's criminal conduct as alleged in the complaint. United States v. Frederic Cilins, 13 Mag. 975 (S.D.N.Y.) (the "Complaint").

1

As described more completely below, one of the properties' co-owners, Michael Noy, was intercepted on a court-authorized wire intercept discussing with the defendant efforts to obstruct the criminal investigation, including the status of the false "Attestation" described in the Complaint (¶ 21). The other co-owner, Avraham Lev Ran, signed a contract that was referenced in the Complaint (¶ 13(d)) as a transfer of something of value to the CW, and bank records show that, in or about July 21 and August 5, 2010, Lev Ran wired hundreds of thousands of dollars from an Israeli bank to the CW in the United States. There is simply no reason to believe that either of these individuals would want the defendant to attend a trial at which their own activities will be the subject of inquiry. If anything, their incentives are quite the opposite.

More to the point, the defendant's initial failure to disclose these two individuals as co-owners of the properties he proposes to secure a bond, like the defendant's failure to provide truthful information during his Pretrial Services interview, reflects the defendant's disregard for these proceedings. Indeed, the casual disregard shown for the veracity of the representations made in these proceedings is of a piece with the defendant's conduct as alleged in the complaint in the first instance: obstructing a grand jury proceeding and federal investigation. For these reasons, and for all of the reasons set forth previously by the Government, the Government believes that the defendant poses a grave risk of flight and should be detained pending trial.

## FACTS AND ARGUMENT

On or about April 19, 2013, in support of his request for the Court to set conditions of release, the defendant proposed as security for a proposed bond, among other things, two real properties in Hollywood, Florida allegedly valued at a total of $2,948,620, each owned by a different limited liability corporation. The two properties are (1) a property located at 2300 Surf Road, Hollywood, Florida, belonging to "Hollywood Beachfront Townhomes LLC"; and (2) a

property located at 2325 Surf Road, Hollywood, Florida, belonging to "Hollywood Beachfront Townhomes South LLC" (collectively, the "Properties" and the "LLCs"). The defendant submitted unsigned affidavits with respect to each of these two properties representing that he alone was "the legal owner" of each of the LLCs.

Defendant's draft affidavits were false. In fact, as reflected in corporate documents for each of the LLCs that own the Properties and in revised affidavits now submitted by the defendant, the defendant co-owns each of the LLCs with two other individuals: Michael Noy and Avraham Lev Ran.

Michael Noy, one of the co-owners of the LLCs at issue, is closely tied to the witness tampering and obstructive conduct for which the defendant has been charged. Pursuant to court-authorized wire intercepts of the defendant's phone, the government intercepted communications between the defendant and Noy—who has been identified by the CW as the defendant's superior within the Entity—concerning the efforts described in the Complaint to obstruct the underlying bribery investigation. These conversations, as drawn from verbatim English translations of the intercepted calls that were prepared by French-speaking FBI translators, include the following:

- During the CW's first monitored and recorded April 11, 2013 meeting with the defendant in Jacksonville, Florida, the defendant called a particular cell phone answered by Michael Noy (the "Noy Phone"). The defendant put the CW on the phone with Noy. Noy engaged in a brief social discussion, including inviting the CW to Miami for a visit. (Physical surveillance conducted by FBI confirmed that Noy was in Miami during this same period.)

- After the CW left the first meeting on April 11, 2013, during which the defendant had presented the CW with a false "Attestation" for the CW to sign, (Complaint ¶ 21), the defendant called the Noy Phone. During this call, the defendant related to Noy: "She has left, the document is done and signed." The defendant then conveyed to Noy that the defendant learned from the CW that U.S. government authorities had confronted the CW about the bribery scheme. Noy asked, in substance, what the CW had told the authorities and how the meeting had ended. After responding to this request, the defendant remarked that "one should not talk too much on the phone" and that "in each case, I think

3

if you want to make comments over there, I think, you should put your telephone aside."

- After the CW returned later for a second monitored and recorded meeting on April 11, 2013, to provide the defendant with copies of the documents the defendant sought to destroy (including one that had been signed by Avraham Lev Ran, the other co-owner of the LLCs as described below), the defendant directed the CW to bring the originals the next time the defendant returns to Jacksonville (Complaint ¶ 22). After the CW left, the defendant again called the Noy Phone. During this call, the defendant said "I will be back on Saturday because not everything was here, so I have to come back." Later in the call, Noy asked "did she agree to give you everything?" The defendant replied, "Yes, it's done deal, it's done deal." Noy queried, "Really?" The defendant said, "Yes. I already have here what was on one side, and the rest will be on Saturday." Noy replied, "That's good, that's good. But I believe that . . . uh, what should be done is that [he/she] should leave."

Avraham Lev Ran, the other co-owner of the LLCs, signed one of the documents described in the Complaint that the defendant has now been indicted for attempting to destroy. In February 2006, Lev Ran signed, on behalf of Pentler Holdings LLC, a British Virgin Islands corporation, a "Lettre D'engagement" (the "Engagement Letter") with the CW, essentially granting the CW a percentage of the Entity's mining business in Guinea. An excerpt from a draft English translation of the key portions of that contract follows:

> The PENTLER HOLDINGS LTD. Company, located in . . . British Virgin Islands, represented by Mr. Avraham LEV RAN
>
> It was previously put forward that
>
> The [Guinea Subsidiary] approached the Guinean authorities with a view to establishing a partnership for the development and exploitation of part of the iron deposits of SIMANDOU.
>
> In the context of this project, [Guinea Subsidiary] submitted to Guinean authorities a proposal allowing shareholding of the Republic of Guinea up to 15% and shareholding of [CW], as a local partner, up to 5%. To this effect, the [Guinea Subsidiary] will constitute, together with the Republic of Guinea, an incorporated company, publicly traded, which will be named *Compagnie Minière de SIMANDOU* [SIMANDOU Mining Company].

4

> In order to incorporate the shareholding of [CW], the [Guinea Subsidiary] will transfer 17.65% of its capital to the Pentler Holdings Ltd Company, of which 33.30% of the capital will be attributed to [CW].
>
> The information put forth above was the subject of a *Protocole d'Accord*, signed between [CW] as one party and the Pentler Holdings Ltd Company as the other party, on the date of February 20, 2006.
>
> It is understood that the issuance of these research permits for the benefit of the [Guinea Subsidiary] engenders, de facto, the shareholding of [CW] in this project at the gratis participation of 33.30%, as provided by the terms of the Protocole d'Accord signed between [CW] as one party and the Pentler Holdings Ltd Company as the other party, on the date of February 20, 2006.
>
> Executed in 2 original copies
>
> The Pentler Holdings Ltd Company, represented by Mr. Avraham
> LEV RAN
> PENTLER HOLDINGS LTD

Bank records also show that Avraham Lev Ran transferred $149,970 and $99,970 on July 21 and August 5, 2010, respectively, from an account in Israel to an account in Florida that belonged to the CW. As also demonstrated by the Engagement Letter—which was under subpoena by a grand jury and which the defendant has now been indicted for attempting to destroy—the very same Avraham Lev Ran who was involved in the underlying scheme to convey things of value to CW is now one of the defendant's proposed sureties.

## **CONCLUSION**

To date, the defendant has been charged with obstructing the investigation of a duly authorized grand jury and federal agents, has provided false information concerning his income and assets to Pretrial Services, and has now failed to disclose his co-ownership of the two main

5

properties proposed as security for a bond with individuals linked to the conduct in the Complaint.

Moreover, the investigation underlying this criminal matter concerns an effort to obtain through corruption a mining concession worth, at the very least, $2 billion. The collateral that defendant wishes to pledge is a pittance compared to the asset at issue, no matter who posts it. Indeed, even the combined value of the Properties is substantially less than the defendant offered the CW to destroy the documents at issue (Complaint ¶20(m)). Defendant, a foreign national with access to substantial resources elsewhere, simply cannot be trusted to appear in Court as required, to face charges supported by overwhelming evidence and for which the defendant faces a substantial term of imprisonment. The defendant presents a grave risk of flight and should be detained.

        Respectfully submitted,

        ROBERT E. O'NEILL
        United States Attorney

        _____/s/_____
        Kelly S. Karase
        Assistant United States Attorney
        AUSA No. 134
        300 North Hogan Street, Suite 700
        Jacksonville, Florida  32202-4270
        Telephone:   (904) 301-6300
        Facsimile:    (904) 301-6310
        Email:        kelly.karase@usdoj.gov

        JEFFREY H. KNOX, Chief
        Stephen J. Spiegelhalter, Trial Attorney
        Criminal Division, Fraud Section
        United States Department of Justice
        Telephone:   (202) 307-1423
        Facsimile:    (202) 514-7021
        Email:        stephen.spiegelhalter@usdoj.gov