D9cnsila                    Argument

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                              13 CR 315 (WHP)

FREDERIC CILINS,

          Defendant.

------------------------------x

                          New York, N.Y.
                          September 12, 2013
                          5:20 p.m.


Before:

                HON. WILLIAM H. PAULEY III,

                          District Judge


                    APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
ELISHA KOBRE
STEPHEN SPIEGELHALTER
    Assistant United States Attorneys

COOLEY LLP
    Attorneys for Defendant
BY:  WILLIAM SCHWARTZ

LEHR, FISCHER & FELDMAN
    Attorneys for Defendant
BRUCE LEHR

LAW OFFICE OF MICHELLE SMITH
    Attorneys for Defendant
BY:  MICHELLE SMITH

ALSO PRESENT:  JOSE VOIGT, French interpreter
                CHRISTOPHER MARTINEZ, FBI

D9cnsila                          Argument

1          (In open court)

2          (Case called)

3          THE DEPUTY CLERK:  Appearances for the government.

4          MR. KOBRE:  Good afternoon, Elisha Kobre for the

5   government.  With me at counsel table is Stephen Spiegelhalter

6   of the fraud section of the Department of Justice and Chris

7   Martinez for the FBI.

8          THE COURT:  Good afternoon, Mr. Kobre.

9          MR. SCHWARTZ:  Good afternoon, your Honor.  William

10  Schwartz of Cooley LLP.  I am the new guy on this block.

11         THE COURT:  All right.  Good afternoon, Mr. Schwartz.

12         MR. SCHWARTZ:  Good afternoon.

13         MR. LEHR:  Bruce Lehr and Michelle Smith as well.

14         THE COURT:  Good afternoon, Mr. Lehr and Ms. Smith.

15         MS. SMITH:  Good afternoon.

16         THE COURT:  I note the presence of a French

17  interpreter.  Would you please identify yourself.

18         THE INTERPRETER:  Yes, your Honor, Jose Voigt.

19         THE COURT:  Please administer the oath to the

20  interpreter.

21         (Interpreter sworn)

22         THE COURT:  Mr. Cilins, are you able, sir, to

23  understand what is being said here this afternoon through the

24  French interpreter?

25         THE DEFENDANT:  Yes, your Honor.

D9cnsila                          Argument

1             THE COURT:  Very well.

2             All right.  This matter is on for argument on two

3    motions, the government's motion in limine and the defendant's

4    motion to compel the production of original documents.

5             Who wants to be heard?

6             MR. KOBRE:  Mr. Spiegelhalter will be speaking on

7    behalf of the government.

8             MR. SPIEGELHALTER:  Your Honor, do you mind if I use

9    the podium?

10            THE COURT:  I want you to use the podium.

11            All right.  Mr. Spiegelhalter.

12            MR. SPIEGELHALTER:  Thank you, your Honor.

13            We can, of course, take this in any order the Court

14   would like.  I think the defense motion was pending first, and

15   there has been a development with respect to the motion to

16   compel.

17            THE COURT:  Right.

18            So I would like to know what the government's position

19   is now.

20            MR. SPIEGELHALTER:  Yes, your Honor.  The portion of

21   the motion -- well, just as a factual background, the

22   government of the United States has now obtained the original

23   documents from the government of Guinea, who had possession of

24   them previously.  We have made them available for inspection by

25   the defense, and we could do that again under proper protocols.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

D9cnsila                              Argument

1    The defense actually did have the opportunity to inspect them

2    today at the FBI's offices.

3            From the government's perspective, the motion to

4    compel itself is moot, the motion to compel production or the

5    opportunity to inspect the documents in the first instance.

6            There was, however, a second part of that motion which

7    was a request by the defense to conduct forensic testing of the

8    contracts.  This is sort of bound up in the second motion, the

9    government's motion in limine.

10           The government's position has not changed which is,

11   that that would be inappropriate in the context of this case.

12   I think that part of the defense motion remains alive and is

13   bound up in the government's motion in limine.

14           With respect to the government's motion in limine,

15   your Honor, I don't want to parrot the briefs back to the

16   Court.  I am sure the Court is very familiar with them.

17           The government's motion is to preclude the defendant

18   from introduction at trial any argument or evidence that the

19   contracts in question were false, fraudulent, or forgeries and

20   that the defendant was therefore justified in attempting to

21   destroy them.

22           The secondary argument is -- frankly, the government

23   believes it could be resolved on that first argument.

24           The secondary argument is, even if the defendant is

25   allowed to testify or put in evidence that he subjectively

1    believed that the documents were forged, that nothing that

2    could be done by an expert at this point would be relevant in

3    this case because it would have no bearing on his belief at the

4    time.

5            THE COURT:  At trial does the government anticipate

6    that its cooperating witness will say that she did sign the

7    contract?

8            MR. SPIEGELHALTER:  The government hasn't made any

9    decision about what questions it would ask the cooperating

10   witness.

11           I can tell the Court that the government's overall

12   goal is to streamline the trial as much as possible, and in the

13   government's view a sideshow about the contracts themselves is

14   dangerous from the perspective of the entire thing, so it would

15   become much longer.

16           The government does not intend, if the Court rules in

17   the government's favor on this motion, to make any issue of the

18   contracts whatsoever.  So the government obviously won't bring

19   anybody to testify that the contracts were real.

20           The government would not focus on the first part of

21   the attestation.  There were three in the false, the creation

22   of a false document count, 1519.

23           The first part of that attestation is that the

24   cooperating witness said she had never signed any contracts

25   with the defendant.  The government will not proceed on that

D9cnsila                          Argument

1   portion of the attestation.

2           The other two portions are clearly false in the

3   government's view, and so the government's own preference is to

4   just streamline the trial by eliminating that issue altogether.

5           THE COURT:  So the government will not be arguing at

6   trial that the contracts were authentic?

7           MR. SPIEGELHALTER:  Correct.

8           The government views that as irrelevant both to the

9   defendant's motive and certainly to the soundness of the counts

10  of obstruction.

11          THE COURT:  All right.  But that is different than the

12  assertions that the government made in its criminal complaint

13  in this case, correct?

14          MR. SPIEGELHALTER:  That is true, your Honor.

15          But already we have moved on to the indictment, and

16  the government doesn't view that it would tread right down the

17  line of what was in the complaint.

18          The government acknowledges that there could be a

19  risk, if the defendant were in some way restricted in a way

20  that was asymmetrical with the way the government was

21  restricted, the government would certainly accept the same

22  restrictions the Court imposed on the defendant under the

23  government's motion.

24          So if the defendant is not allowed to argue that the

25  contracts are forgeries, the government won't argue that they

D9cnsila                    Argument

1    are real.

2              That from the government's perspective is the way that

3    the trial should proceed.  In the government's view, the risk

4    is a risk of nullification, because overall the defendant's

5    argument goes to a point that simply cannot nullify his mens

6    rea under the statute.

7              The way the statute is written and the legislative

8    history and the case law under it, which the government set out

9    at great length in its motion and its reply, all go to the

10   reality that the fact that a contract is forged or is

11   inauthentic doesn't go to whether a grand jury can have it, and

12   it certainly doesn't empower an individual to decide whether

13   the grand jury gets it after the individual is made aware that

14   the government has subpoenaed it.

15             The government won't proceed to try to prove that the

16   object is real.  It would just be irrelevant to that inquiry.

17             THE COURT:  Doesn't Judge Pratt's decision in <u>United</u>

18   <u>States v. Johnson</u>, the Second Circuit decision from 1992, stand

19   for the proposition that the affirmative defense is available

20   to a defendant whose sole purpose was to induce a witness to

21   testify truthfully?

22             MR. SPIEGELHALTER:  That opinion I am not as familiar

23   with, your Honor, but that is certainly the intent of 1512(f) I

24   believe, the affirmative defense, or 1512(b), I'm sorry, the

25   affirmative defense.

1      But here the issue is not one of trying to get the

2 witness to testify truthfully.  In fact, the defendant used the

3 word "lie."  But, more importantly, that doesn't go to an

4 effort to destroy a document; not even just withhold it so that

5 a privilege can be sorted out or whatever it may be, but to

6 destroy a document.

7      The affirmative defense doesn't appear any way to

8 cover that sort of conduct.  As the government pointed out in

9 its brief, the affirmative defense really was about augmenting

10 the amount of information that the grand jury had available to

11 it, and that affirmative defense was meant to protect court

12 officers and prosecutors and FBI agents and people like that if

13 one looks back at the legislative history.

14      THE COURT:  Shouldn't the defendant here, Mr. Cilins,

15 be entitled to testify that his sole intent in engaging in the

16 prohibited conduct was to induce the cooperating witness to

17 testify truthfully or provide truthful documents?

18      MR. SPIEGELHALTER:  I don't think there is a factual

19 predicate for that.

20      The government would refer the Court back to all of

21 the duress cases as to whether -- in the government's view

22 there has to be a threshold that's been met with respect to

23 some proffer of testimony or evidence.

24      Otherwise, the risk of nullification is so high, and I

25 think that's why the duress defense is regularly ruled that it

D9cnsila                          Argument

1    can't be put before the jury.

2            But I just don't see as a factual matter how the

3    defendant can even get within a stone's throw of that

4    proposition based on what we know from the tapes, because the

5    effort didn't solely hinge upon her testimony or what she would

6    tell the FBI agents.  It was about actually destroying evidence

7    that the grand jury had sought.

8            So in the government's view that affirmative defense

9    just doesn't apply.  It would be very difficult to imagine a

10   circumstance in which it would apply to that set of facts.

11           THE COURT:  Was duress asserted in the Johnson case?

12           MR. SPIEGELHALTER:  I actually don't recall that, your

13   Honor.  I don't recall that.

14           But I do know that that line of cases, in the

15   government's conception this is really an economic duress

16   argument that the defense is making:  My confederates and I

17   were being blackmailed by someone and we didn't want to part

18   with our money.  Therefore, I was justified in doing something

19   that would otherwise break the law.

20           It doesn't get close to the threshold of being put

21   before the jury under the normal duress test.  So the

22   government's view is that that defense, where you can't meet

23   the set-out test and where an actual threat of harm is not put

24   before juries on a regular basis because the district Court

25   finds that there is insufficient evidence to do that, and I do,

D9cnsila                    Argument

1      again, think that the risk is nullification.  Something that

2      falls so short of that here would be especially dangerous.

3              What the government doesn't want to do is have a

4      contest about who the jury likes more, the cooperating witness

5      or the defendant or the FBI agent or whatever it may be.  The

6      government's conception is that's the risk of proceeding down

7      this line.

8              THE COURT:  Anything else, Mr. Spiegelhalter?

9              MR. SPIEGELHALTER:  I don't have anything to add to

10     the briefs unless the Court had additional questions.

11             THE COURT:  No, not now.

12             Thank you.

13             MR. SPIEGELHALTER:  Thank you.

14             THE COURT:  Mr. Schwartz.

15             MR. SCHWARTZ:  Yes, your Honor.

16             THE COURT:  Or Mr. Lehr.

17             MR. SCHWARTZ:  Your Honor, let me begin by saying what

18     this is not about.  This is not about our assertion of an

19     affirmative defense, and it is not about an assertion of a

20     duress defense.

21             I will come to that, but I want to be very clear that

22     that's not the basis that that we think under which we are

23     entitled to test these documents.

24             I will deal with the two motions together, your Honor,

25     but I will note that our motion, which is to be able to now

D9cnsila                          Argument

1     test the documents that we've seen with an expert, is one that

2     really should be decided not on the standard of relevancy, but

3     on the standard of whether it is material to the preparation of

4     the defense.  Will it aid us if we find out that these

5     documents are inauthentic at some point to develop a defense in

6     this case.

7              The defense ties into the second motion.  But your

8     Honor doesn't necessarily have to decide that the defense is

9     available to us today in all its terms in order to move forward

10    and allow us to test the documents.

11             The principal, practical effect of deciding that we

12    can't test the documents, your Honor, is that we will not be

13    able to test the authenticity of documents that we believe a

14    cooperating witness, somebody who has a cooperation agreement

15    with the government, and who's going to testify at this trial

16    as far as we know, has proffered to the government and stated

17    that they were authentic.  The question goes very much to her

18    credibility, which I will come back to.

19             Let's deal with the issue of the defense, your Honor,

20    and why we think that we are entitled to these and what prong

21    of the statute or the statutes we are resting the defense on.

22             The crimes that have been charged here are specific

23    intent crimes.  Both crimes involving, certainly the crimes

24    involving the destruction of documents and at least two of the

25    three counts involving the affirmation.

D9cnsila                    Argument

1            I will deal first with -- I will make a general

2    statement about the state of mind and how state of mind can be

3    proved.

4            The government in its brief says we are entitled to

5    call the defendant, we can call the defendant, and only the

6    defendant can testify to his state of mind.

7            Every day in this courthouse, your Honor, and I would

8    imagine in many trials before this Court, the government proves

9    the defendant's state of mind sometimes beyond a reasonable

10   doubt through the use of circumstantial evidence.

11           There is a charge that is often given to the juries in

12   this courthouse that the government is entitled to rely on

13   circumstantial evidence to prove the state of mind of a

14   defendant.

15           Well, certainly, your Honor, a defendant is not

16   required to testify and cannot be forced to testify in order to

17   dispute his state of mind if there is in fact circumstantial

18   evidence available that can be put before the jury and argued

19   to the jury about his state of mind.

20           That's the issue with the authenticity of these

21   documents.  Are they circumstantial evidence as to the state of

22   mind of the defendant?

23           If so, I think the case law in the Second Circuit is

24   clear:  You have to give us a very broad swath to prove

25   circumstantially to defeat the government's obligation to prove

1    reasonable doubt on the state-of-mind elements of each of the

2    crimes that are charged.

3           So we don't have to call the defendant to prove his

4    state of mind.  We don't have to prove his state of mind.  We

5    have to dispute their proof, and we are entitled to do that by

6    circumstantial evidence.

7           Let's deal with the different counts.

8           With respect to the affirmation, your Honor, and the

9    inducing her to sign a false affirmation, it is not just the

10   contracts.  There are several paragraphs in the attestation.

11   The one that the government is prepared to give up is the one

12   that says, I have never signed a single contract with blank --

13   because I have it blacked out in my version -- either directly

14   or indirectly or through anyone else.

15          They are saying they are prepared to walk away from

16   that.  I question what the government knows that we don't yet

17   know about what this witness is telling them about whether she

18   signed these documents or didn't sign these documents that they

19   are so eager and so willing to walk away from that.  It kind of

20   tests the whole case.

21          The second one it says, It appears that one says that

22   I would have interceded with official leaders of Guinea in

23   favor of -- so that blank would obtain mining rights in Guinea.

24

25   That is false.

D9cnsila                     Argument

1          Apparently, they are not prepared to walk away from

2    that.  These contracts, in the government's theory of the case

3    and I believe in what the witness is going to say about the

4    case, are proof of some kind of foreign corrupt practices, that

5    they are the contracts to which money was going to be funneled

6    to government officials in Guinea.

7          If my client felt that they were inauthentic, it is

8    proof that he may have had a belief that there was no money

9    sent to anybody in Guinea, and that therefore the statement

10   that this is false in the attestation is an accurate statement.

11   It is circumstantial evidence of that.

12         The circumstances under which the conversation take

13   place, your Honor, are going to show that my client is very

14   familiar with the things that he's asking for.  The government

15   says in its brief --

16         THE COURT:  But how would that defeat the government's

17   obstruction count as opposed to the false attestation counts?

18         MR. SCHWARTZ:  Let me move on to that.  There are two

19   counts of obstruction.

20         There are two critical elements in the obstruction

21   statute.  One is the knowingly.  You have to act knowingly.

22         The Supreme Court has yet to define exactly what the

23   parameters of knowingly are, but it appears, if you read the

24   statute, and it's common sense, knowingly probably applies to a

25   number of different elements of the statute, including knowing

D9cnsila                         Argument

1   that there is a grand jury and knowing that this would impede

2   the grand jury investigation.

3           The second thing that you have to do, your Honor, is

4   you have to act with a specific intent, and the specific intent

5   in this case is a corrupt intent.

6           It's the intent that the Supreme Court examined in the

7   Arthur Andersen case, a case in which individuals at Arthur

8   Andersen were destroying documents under a document maintenance

9   program while at the same time knowing that there was an SEC

10  investigation and actually making statements that there is an

11  SEC investigation and if we don't destroy them the SEC will get

12  them.

13          The trial court failed to properly charge the issue of

14  corrupt intent.  The trial court failed to tell the jury that

15  it is something that -- I have the language here, your Honor --

16  that it is wrongful and immoral depraved, evil, that the

17  defendant was conscious of wrongdoing and that what his intent

18  was, was to actually subvert the fact finding.

19          Those are the elements that the government has to

20  prove beyond a reasonable doubt, that he had an intent to

21  subvert fact finding, that he knew what he was doing was wrong

22  and depraved, and that he was conscious of his wrongdoing.

23          Those are the things they have to prove.  So the

24  question your Honor asks is how does the inauthenticity of

25  those documents go to that element?

D9cnsila                    Argument

1          Well, at this stage, your Honor, of course, I'm not

2    required to lay before the Court what our defense is, and I

3    should not be required to do that and how we might prove it,

4    everything in the defense.

5          But I can deal in hypotheticals.  And I can say

6    hypothetically, what if a defendant in my client's situation

7    were able to show that documents in another case that were

8    inauthentic, that he knew had been inauthentic, had been used

9    in shakedowns prior to meetings that he was having with the

10   witness here, and that what he did was come to the United

11   States to try to stop, finally stop a series of extortions that

12   had taken place.  He thought there were extortions and wrongful

13   extortions because he believed that the contracts were in fact

14   inauthentic.

15         If they are inauthentic, by the way, it's pretty

16   powerful circumstantial evidence that the belief was an

17   accurate belief.

18              THE COURT:  If I can interrupt for a second?

19              MR. SCHWARTZ:  Yes.

20              THE COURT:  How do you make the link then between

21   Mr. Cilins' state of mind and the fact that the documents --

22   let's assume they are inauthentic.  Without your client

23   testifying, how do you make the link?

24              MR. SCHWARTZ:  One way that it could be done, your

25   Honor -- I don't want to say how we would do it, but one way it

D9cnsila                        Argument

1    can be done is by showing that he was familiar with the

2    circumstances about the documents, that there is a back story

3    here, that the back story might involve extortion and that the

4    documents have been used before, that people that signed the

5    documents purportedly.  Some of them were in business with him.

6         The jury would be entitled to conclude, and the

7    government's got tapes I believe of him talking to one of them

8    that they have given to us.

9         The jury could infer that these people had told him

10   that they hadn't signed these documents.  We are allowed to

11   argue inferences to the jury, and this is circumstantial

12   evidence that that is true if they in fact turn out to be

13   false.

14        I think that is a better argument for the state of

15   mind we are putting forward than the state of mind they are

16   putting forward?

17        How do they prove?

18        It is circumstantial evidence, powerful circumstantial

19   evidence.  The falsity of these documents in the context of a

20   client who is dealing with partners who purportedly signed the

21   documents and who is now prepared to pay to get them back, if

22   they are in fact false, that is powerful proof that he in fact

23   believed they were false.

24        If he testifies that they were false, and that's

25   certainly an issue that we should not have to confront at this

D9cnsila                    Argument

1    date, by any stretch of the imagination, but we have that

2    option, and one of the options we have is to call the witness

3    and to have him say I believe they were false.

4         If they were in fact false, that's powerful

5    corroboration of his testimony, and we should not be able to

6    deprive him of that corroboration, certainly not two a half

7    months before a scheduled trial date.

8         So it comes into evidence, I believe, to his state of

9    mind.  They may argue it's weak evidence.  I happen to think it

10   is powerful evidence that he didn't believe that they were true

11   if they turn out to be false and there are other circumstances

12   that link him to the people who signed the documents.

13        It gives him another reason to be here to get the

14   documents back than to subvert a federal investigation.

15        It is up to the jury to decide.  It's not up to the

16   government to tell the Court, well, the tapes don't show a

17   basis for that.  It is up to us to get from the tapes what we

18   think the basis is and argue it to the jury and let the jury

19   decide.

20        The Court has been clear, the Supreme Court has been

21   clear.  This is an issue for the jury.

22        If it were not an issue for the jury they would not

23   have reversed the Arthur Andersen case, because the facts in

24   this case were pretty powerful.  But a mischarged jury that

25   didn't get to consider this resulted in a reversal of Arthur

D9cnsila                          Argument

1    Andersen, unfortunately after the demise of the company.

2              I hope I have answered your question, your Honor.  If

3    not, I will try a different way.

4              THE COURT:  No.  You can proceed.

5              MR. SCHWARTZ:  So his state of mind in not believing

6    they are true which is corroborated by or proved

7    circumstantially by the documents is also relevant to whether

8    he thinks this witness is lying about a grand jury.

9              I mean, yes, she refers to a grand jury on the tapes.

10   She never shows him a grand jury subpoena.  Although one had

11   been issued to her she says they might give me a subpoena later

12   on.

13             Well, this is a foreigner who it is apparent from the

14   tapes has never heard the words grand jury before he's come in

15   to have this conversation with her.

16             She actually makes a printout from Wikipedia and gives

17   it to him explaining what a grand jury is.  If this is a woman

18   with a history of lying and history of producing false

19   documents and a history of extorting people to pay money based

20   on false documents, this is also a woman who might lie about

21   the existence of a grand jury.

22             His subjective belief as to whether there was a grand

23   jury is what the government must prove.  They must prove

24   subjectively not that she told him that there is a grand jury

25   sitting and listening to this case or that I might get a

D9cnsila                        Argument

1    subpoena, but that he knew that, the knowledge requirement,

2    that he knew that there was a grand jury and that he knew that

3    his actions were going to impede an ongoing investigation.

4              That is another way that the falsity or accuracy of

5    the documents is critical in this case.

6              Yet another way, your Honor, not knowing much about

7    grand juries, not knowing that -- we don't dispute, and I don't

8    want there to be any question.  We do not dispute that the

9    grand jury is entitled to whatever it wants.

10             If the grand jury wants documents that are false or

11   they want to determine for themselves that they are false under

12   the law, the grand jury is entitled to that.

13             If I am served with a subpoena, understanding the

14   grand jury system as I do, obviously I'm going to produce

15   documents whether I think they are false or not, if they are in

16   fact covered by the subpoena.

17             THE COURT:  That is what "any and all" means, right?

18             MR. SCHWARTZ:  Yes.

19             The government has thrown up this red herring that we

20   somehow think the grand jury wasn't entitle to the documents.

21             We are not saying that.  What we are saying is that he

22   has to know that.  Then, even if he does know that, he has to

23   act corruptly to impede their investigation knowing that he is

24   acting wrongfully.

25             In a case involving a foreign person who's never heard

D9cnsila                        Argument

1    the words grand jury before, that is a hurdle for the

2    government to have to leap in this case.

3           One of the things that we can put in the way of that

4    hurdle, that we should be entitled to put in the way of that

5    hurdle or make the hurdle higher for them, is proof that the

6    documents that they were seeking were false, because now we

7    have a foreign citizen coming into the United States whose

8    never heard of the words "grand jury" before, who's told about

9    grand jury from a woman who may have lied to him before and

10   lied to his partners before, and who he thinks is going to

11   produce phony documents to that grand jury.

12          How is he supposed to know he's impeding a grand jury

13   investigation?

14          And if the documents turn out to be false once again

15   it's corroboration, it is proof that he believed that there

16   they were false.

17          If he doesn't testify, circumstantially he can argue

18   about to the strength of that, and it's corroboration if he

19   does testify.  I comes in, I think, in all kinds of different

20   ways.

21          We should be permitted -- two other ways.

22          I don't know how government is going to prove its

23   case, but typically they would prove what the grand jury was

24   investigating, and they would try to establish a motive with

25   respect to destroying documents, because there is an

1    investigation of foreign corrupt practices, and try to somehow

2    suggest to the jury that this defendant wanted to impede the

3    grand jury in its investigation so that he would not be charged

4    or his partners would not be charged.

5           His belief that the document are inauthentic and the

6    proof that they are inauthentic drives a truck through the

7    motive, and we should be permitted to drive that truck.

8           THE COURT:  Is it your contention that if Mr. Cilins

9    doesn't know what a grand jury is that he can't be convicted?

10          MR. SCHWARTZ:  It is my contention that if Mr. Cilins

11   did not believe that he was impeding some kind of official

12   investigation, if he did not believe there was an

13   investigation, he certainly can't be convicted.

14          You can tell me there is a grand jury, and I can think

15   you are a nut and take the documents and rip them up, and in

16   fact there is a grand jury.

17          But if I can prove that I thought you were a nut and

18   thought you were lying to me about a grand jury, I've destroyed

19   evidence, but I haven't done it criminally.

20          That's what the Arthur Andersen case is about.  Arthur

21   Andersen was destroying evidence, and they were doing it

22   knowing that it was potential evidence.

23          But the question the Supreme Court had is, if the jury

24   isn't told that it was done corruptly, that they had to

25   consider whether it was done corruptly, a decision exclusively

D9cnsila                    Argument

1    in their province.  They can't take this away by what I call

2    the criminal equivalent of a summary judgment motion.

3           They can't say there's no defense under any state of

4    the facts.  The prosecutor -- who I met just today and I

5    apologize by not calling him by name -- talked about there's no

6    basis in the evidence for this.

7           That is a summary judgment motion.  They don't get to

8    make that argument until our case begins.  If at the time our

9    case begins they have a valid argument that says they should

10   not be allowed to present this defense, because they can't tie

11   X to Y, that's what your Honor does every day in cases.  You

12   consider whether you are going allow evidence to come in.

13          We think that your Honor can decide today that this is

14   a valid defense, that the state of mind defense is a valid

15   defense, and an expert putting on testimony in that regard is a

16   valid way to prove that.

17          But if your Honor doesn't, we are two and a half

18   months and a couple of weeks premature for that decision.

19   Right now we're in discovery trying to develop the defense.

20          I think under any standard of Rule 16 these documents

21   and their authenticity are material to the development of that

22   defense.

23          Finally, your Honor let's talk about the witness.

24          Credibility always an issue at a criminal trial.  This

25   is a witness who they call a cooperating witness, so I will

1    venture a guess that she has a typical Southern District

2    cooperation agreement.

3            I don't know what the deal is.  I don't know whether

4    she's gotten immunity.  I don't know whether she's gotten any

5    other benefits.

6            But what I do know is that in that cooperation

7    agreement there is a line that says that the government can rip

8    up her agreement if she fails to tell the truth.

9            And I can bet my life that if there is any

10   cross-examination of this witness, or if we suggest in opening

11   statements that this witness has lied, the first thing the

12   government will do -- if we suggest it in opening statement,

13   they will do it on direct, if we suggest it on

14   cross-examination they will do it on redirect -- they are going

15   to offer that cooperation agreement to bolster her credibility

16   with the jury.

17           They are going to vouch for her with the cooperation

18   agreement saying, Do you know what this means?

19           And she's going to say it means I can't lie.  If she's

20   lied about something so critical as documents that are at the

21   core of a foreign corrupt practices investigation, that is

22   something we should be allowed to cross-examine on.

23           If she testifies at all as to the meaning of the

24   documents -- you know, they have to show that the documents

25   were relevant to the grand jury investigation.  I don't know

D9cnsila                         Argument

1   how they are going to do that.

2          In the complaint, the FBI agent says I believe that

3   these were the documents you wanted and that these were

4   documents that showed bribery.

5          He's not going to be able to do that here.  His state

6   of mind as to what my client thought is absolutely irrelevant.

7          They are going to need to ask her, what were the

8   documents that you thought he wanted?

9          These documents are at the core of the case.  They

10  can't hide them.  They can't take them out of the courtroom.

11  They can't get rid of counts or get rid of specifications in

12  counts and then say we have protected them.

13         What's going on here?  What do they know about them

14  that we don't know?

15         We should be allowed to look at those documents and

16  make a decision for ourselves as to whether they are authentic.

17         We should be allowed, if they are inauthentic, to use

18  that evidence in creating our defense, and responding to their

19  state-of-mind evidence and in cross-examining and impeaching

20  their witness.

21         This is core stuff.  This isn't stuff at the

22  periphery.  This isn't stuff about an affirmative defense that

23  doesn't apply in this case.  We agree it doesn't apply.  This

24  is stuff that goes to the most fundamental thing that they've

25  got to prove, and we think is the hardest thing for them to

1    prove.

2         Can they prove there was a grand jury?

3         I think they probably can, although I don't know this

4    that yet.

5         Can they proffer that the grand jury wanted these

6    documents?

7         Maybe.  I have to see what their interpretation of

8    their subpoena is.

9         Can they prove that my client knew that, and believed

10   it subjectively?

11        They've got proof that they will offer on that issue,

12   but I don't think it gets there.  And I've got proof that I

13   think we're going to be able to offer to rebut it, and I think

14   the jury will be with me, or at least I should be able to allow

15   them to decide that question and make that argument to them.

16        This is fundamental stuff.  This isn't a case where

17   they just come in, prove there is a grand jury, prove somebody

18   wanted to rip up document.  That would destroy the Supreme

19   Court's ruling in Arthur Andersen.

20        THE COURT:  What happens if the documents turn out to

21   be authentic?

22        Is the government going to be able to make the

23   counterargument?

24        MR. SCHWARTZ:  The government said in its motion, your

25   Honor, that you should stop a mini trial and what mini trial

D9cnsila                    Argument

1    they propose it might be is the battle of the experts.

2            Your Honor may in your heart of hearts want to stop

3    battles of the experts in every case, but you and I both know

4    that battles of the experts are the real world in this

5    courthouse.

6            We are talking about a battle of the experts that is

7    going to take what?  A day in total?

8            Our expert testifies in the morning that they are

9    inauthentic, if in fact that is what his opinion turns out to

10   be.  Their expert testifies on rebuttal in the afternoon that

11   they are authentic.

12           The jury, like it does in every other case, will

13   decide which expert is more persuasive.  If the jury decides

14   that they are authentic and that he knew that they were

15   authentic and that he knew that the grand jury wanted them and

16   that he knew that they were called for and that he acted

17   knowing that he was corrupting the grand jury process, they

18   will convict him.

19           But if it finds a reasonable doubt on any of those

20   things, they have to acquit him.

21           That's all that we want the chance to show here.  And

22   that's what this evidence goes to.

23           THE COURT:  All right.  I think I have your argument.

24           Mr. Spiegelhalter, do you want to be heard briefly?

25           MR. SPIEGELHALTER:  Yes, your Honor.  Thank you.

D9cnsila                      Argument

1        I think defense counsel stepped on the Court's

2    question which is goes to the heart of the issue of whether

3    forensic testing for authenticity is really relevant here;

4    which is, if the reverse were true and say two experts say they

5    are authentic, it's not going to underline Mr. Cilins' argument

6    that he didn't know that at the time.

7        The government cited several opinions on this very

8    issue, and after-the-fact expert opinion about whether

9    something is or false can't be ingrafted back on what happened

10   at the time.

11       This really goes to the entire argument about the

12   forensic testing.  I still, sitting here, can't conceive of why

13   how this would help the defense prepare, if they are true or if

14   they are false, if it doesn't generate evidence that's going to

15   come in.

16       Mr. Cilins already knows all the players involved.  I

17   don't think there is any dispute about that.  He's talked to

18   them in the past.  If he wants to testify about what they told

19   him, then that is a bridge we have to cross at a later date.

20       But nothing that the expert would say or nothing that

21   an expert would say could shed any light on what Mr. Cilins

22   knew when he paid to have the documents burned.

23       So there's no reason to subject what in the

24   government's view is an original set of documents that are

25   aging at this point, to tests that can in some instances be

D9cnsila                        Argument

1    quite invasive.

2            There's just no reason to do that when they're

3    relevant to a further inquiry and can be used later.  There's

4    no reason to do that here.

5            THE COURT:  What do you mean when you say the

6    documents are aging?

7            MR. SPIEGELHALTER:  I mean, they are from 2006.  They

8    have been residing in Guinea for years.

9            When an expert goes and tests things like ink, there

10   is nondestructive testing and then there is destructive

11   testing.

12           Destructive testing involves boring holes into the

13   documents in order to test the paper.  That is not something we

14   want to have done here, only to have it done later in another

15   case, when it doesn't generate any evidence that would be

16   relevant to the inquiry that this jury has to make.

17           So I think the government has covered its view at

18   least, and I think the Court was going there with its question

19   about whether these documents are actually circumstantial

20   evidence of anything that Mr. Cilins could believed.

21           That's just simply not you the case.

22           I don't know if the Court wants me to address why the

23   government would -- I think the government has already

24   addressed why it would not want the documents tested, which is

25   it has nothing do with its confidence in the cooperating

D9cnsila                        Argument

1    witness.

2          I think one other issue that arises with the

3    defendant's argument in this regard is, even if there is all

4    this testing, even if he wants on undermine the cooperating

5    witness, he's not going to be allowed to do that with extrinsic

6    evidence.

7          He can cross-examine her, but he would be struck with

8    her answers to the questions that he poses.  He couldn't have

9    the witness on, call her a liar and then have an expert come in

10   and say, yes, in fact she was lying.

11         That's not generally the way that it works.  If they

12   wanted to challenge her, they would have to challenge her

13   through cross-examination, not through extrinsic proof later.

14         I think one thing that comes up repeatedly in the

15   hypothetical, about the hypothetical, which is clearly the

16   defense that's been laid out repeatedly, which is that she was

17   shaken down repeatedly -- I'm sorry, that the cooperating

18   witness had shaken down Mr. Cilins repeatedly.

19         But I think the key that I come back to is something

20   that the Court highlighted.  In the subpoena itself it calls

21   for all documents.

22         It doesn't say all authentic documents, it doesn't say

23   all originals, or all copies.  It call for all of them, any and

24   all of them.

25         It is obviously to be construed broadly.  So the

1    proffered noncriminal motive, which is, I didn't want the grand

2    jury to have them because they were fake, doesn't undermine as

3    a matter of statutory interpretation or as of the case law

4    doesn't undermine the criminal motive, which is that he didn't

5    want the grand jury to have the opportunity to make that

6    judgment for itself.

7         So, whatever else might have been going on in his

8    mind, once he's told there is a subpoena, he can't continue.

9         Now, the question about whether he would believe the

10   cooperating witness or not is something that is totally

11   different.

12        Again, I think the government would just come back and

13   point out that that can be proved extrinsically.

14        I think we will have this dispute later, so I don't

15   want to -- I know that it's already getting late, but the

16   standard of proof on whether these are specific intent or

17   general intent crimes I think is a bridge we can cross when it

18   comes to the jury instructions.

19        But I think one thing that's becoming sort of a

20   repeated theme is ignorance of the law is Mr. Cilins defense:

21   I didn't know what a grand jury was, I didn't know if they had

22   the power to compel documents, I didn't know if they had the

23   power to compel documents that were fraudulent.

24        That simply is not a defense.  The government's view

25   is actually these are general intent crimes, but we can cross

D9cnsila                          Argument

1   that bridge when we come to it.

2              I think other than that, unless the Court has

3   additional questions.

4              THE COURT:  All right.  Thank you, Mr. Spiegelhalter.

5              MR. SPIEGELHALTER:  Thank you.

6              MR. SCHWARTZ:  Your Honor, I will be very brief, if I

7   may.

8              First, as to the last point, the Supreme Court has

9   said that the statute requires an intent to subvert fact

10  finding.

11             So I think that is a full answer.

12             Second, with respect to the subpoena, once again, my

13  client wasn't shown the subpoena.  And, frankly, your Honor, if

14  you read the subpoena, you might ask whether a document that is

15  not related to the actual contract for the mines, whether a

16  false document is covered by the subpoena.

17             I am not clear, and I have read the subpoena, that it

18  calls for all documents relating to this project.  If it is an

19  inauthentic document, it doesn't related to this problem.

20             The fact that I write a little note and make something

21  up doesn't make it relate to anything.  So, he didn't see the

22  subpoena, but had he seen the subpoena I think the defense

23  might even be stronger than it is.

24             The government keeps saying that this is not proof of

25  his state of mind, I guess because we haven't shown all the

D9cnsila                    Argument

1    circumstances that lead to that.

2            We are not required to yet.  We don't have to lay out

3    everything that we think is going to get to the point where

4    when the jury hears that these are false documents, they are

5    going to hear that that was the state of mind or that

6    corroborated his state of mind.

7            We are just not required to do that at this stage, and

8    we shouldn't be required to do that at this stage.

9            The government made a motion in which they essentially

10   argued for summary judgment on grounds that we were asserting

11   an affirmative defense which we are not asserting.

12           They didn't address in their motion the arguments that

13   I am making today, and they didn't address in their reply brief

14   the arguments that we made in our brief about their witness's

15   credibility.

16           The issue of extrinsic evidence is not as simple as he

17   has said it is.  It depends in all kinds of different ways,

18   what the witness says and how it comes in, what we are entitled

19   to use to impeach her.

20           And certainly, if they put in her cooperation

21   agreement, which I am certain they are going to do, we are

22   entitled to show that she lied to the government.  That much I

23   know for sure.

24           I can't understand what it is about these documents

25   that they are telling us you can't look at them.  You can't

D9cnsila                        Argument

1    test them.

2              If they've got a reason at trial to keep them out,

3    let's hear it at trial.  Let us prepare for trial and prepare

4    our defense; and, if we find out they are inauthentic, whether

5    we can find a way to get them into evidence.  If we find out

6    that they are authentic, we will have to deal with that and

7    structure our defense in a different way.

8              But we should be able to test these documents.

9              THE COURT:  All right.  Counsel, thank you for your

10   arguments.  Decision reserved on the motions.

11             Anything further at this time?

12             MR. KOBRE:  Not from the government, your Honor,

13   except that the government would request to exclude time under

14   the Speedy Trial Act before we conclude the proceeding until

15   trial date of December 2 from today until2.

16             MR. SCHWARTZ:  We have no problem with that, your

17   Honor.

18             THE COURT:  All right.  So the defendant consents to

19   the exclusion of time between now and December 2?

20             MR. SCHWARTZ:  One moment.

21             Your Honor, as I said, when I --

22             THE COURT:  Has he made a decision?

23             MR. SCHWARTZ:  Yes, he does.

24             THE COURT:  He does.

25             MR. SCHWARTZ:  When I made may appearance this

D9cnsila                        Argument

1    afternoon, your Honor, I said I'm the new guy on the block.

2            One of the things I am looking at is this December 2

3    trial date.  There is an awful lot of material.  I'm not asking

4    that the Court push this far, but I was wondering if we could

5    push this trial into next year, particularly if the Court

6    orders that we are permitted to do this additional discovery.

7            I would appreciate it very much.  My client has

8    consented to that.  Sometime in January or February, if the

9    Court could see fit to do that, I would appreciate it.

10           THE COURT:  I am open to that.  Do you want to fix

11   adjourned date now?

12           MR. SCHWARTZ:  We don't necessarily have to, your

13   Honor.  Can I confer with cocounsel and my client?

14           THE COURT:  Yes.

15           MR. SCHWARTZ:  Your Honor, I think it might be a

16   better thing to do after your Honor rules on this motion,

17   because then we will have a better sense of what awaits us in

18   terms of preparation.

19           THE COURT:  All right.  Let me just suggest in the

20   meantime that the parties try to keep their calendars clear

21   starting on February 3 because I have a lot of trials between

22   now and the middle of January.

23           MR. SCHWARTZ:  I will look forward to spending my

24   birthday with the Court.

25           THE COURT:  There is no better place, Mr. Schwartz.

D9cnsila                          Argument

1    All right.

2              Anything else?

3              So for now do I have a consent?

4              I am going to exclude time until December 2 at this

5    juncture?

6              MR. SCHWARTZ:  Yes, your Honor, you have our consent.

7              THE COURT:  All right.  I find that this continuance

8    serves to insure the effective assistance of counsel,

9    especially with new counsel in the case and the motions pending

10   before the court, so I prospectively exclude the time from

11   today until December 2 from Speedy Trial Act calculations.

12             I find that this continuance serves to ensure the

13   effective assistance of counsel and prevent any miscarriage of

14   justice.

15             Additionally, I find that the ends of justice served

16   by such a continuance outweigh the best interests of the public

17   and Mr. Cilins in a speedy trial pursuant to 18 U.S.C. Section

18   3161.

19             Anything else?

20             MR. SPIEGELHALTER:  Not from the government, your

21   Honor.

22             THE COURT:  Anything else, Mr. Schwartz or Mr. Lehr?

23             MR. SCHWARTZ:  Nothing at this time, your Honor.

24             THE COURT:  All right.

25             Have a good evening and an easy fast.

D9cnsila                    Argument

1              MR. SCHWARTZ:  Thank you, your Honor.

2              MR. KOBRE:  Thank you.

3              (Adjourned)