UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA             :

   -v.-                                            :        13 Cr. 315 (WHP)

FREDERIC CILINS,                              :
   a/k/a "Frederic Francois Marcel Cilins,"
                                                           :
                    Defendant.
                                                           :
------------------------------------------------------------x


**THE GOVERNMENT'S MEMORANDUM
IN SUPPORT OF ITS REQUEST TO FILE ITS
WITNESS LIST TWO WEEKS BEFORE TRIAL**


                                    PREET BHARARA
                                    United States Attorney
                                    Southern District of New York
                                    Attorney for the United States of America

                                    JEFFREY H. KNOX, Chief
                                    Criminal Division, Fraud Section


Elisha J. Kobre
Assistant United States Attorney

Tarek Helou, Trial Attorney
Criminal Division, Fraud Section

- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA        :

   -v.-                          :        13 Cr. 315 (WHP)

FREDERIC CILINS,                :
   a/k/a "Frederic Francois Marcel Cilins,"
                                :
                     Defendant.
                                :
---------------------------------------------------------------x

## THE GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS REQUEST TO FILE ITS WITNESS LIST TWO WEEKS BEFORE TRIAL

**I.   Introduction**

The Government respectfully submits this memorandum in response to the Court's order during the December 6, 2013 status conference that the parties file letter briefs addressing the defendant's request for early disclosure of the Government's witness list. At that status conference, the Government agreed to disclose its witnesses two weeks before trial, which is set to begin on March 31, 2014. However, the defense asked the Court to direct the Government to disclose its witnesses to the defense "some period" earlier.

The defendant has not made, and cannot make, the requisite showing, as required by the Second Circuit, of particularized need for yet earlier disclosure. Indeed, this is not a case where the defendant needs a list of Government witnesses before trial, let alone two weeks before trial, which is when the government has already agreed to disclose its witness list. At this point, more than two months before trial, the defendant already:

- Knows the identity of one of the likely main witnesses against him, a cooperating witness (the "CW") whom the defendant has known for years and

2

        whom he tried to bribe to destroy documents under subpoena by a grand jury in this district and to lie to the FBI;

- Knows that much of the Government's evidence at this obstruction trial will be his own statements recorded during meetings and telephone calls with the CW; and

- Has received not only all of the recordings that the government will use at trial, but also draft transcripts of each them, and will soon receive final transcripts and translations.

      Moreover, because the defendant – at the direction of, and in a coordinated and planned effort with, others who remain at large – brazenly attempted to obstruct a federal grand jury investigation in this district, there is substantial concern for further obstruction by the defendant and others. As courts in this District have recognized, the risk that a defendant will tamper with witnesses is greater in an obstruction case because the defendant has already shown that he disregards the judicial process. In this case, the risk is heightened, not just by the charged obstruction conduct, but also by the defendant's repeated lies after his arrest about his real estate holdings and other substantial assets outside the United States. Moreover, the risk is even greater here because during meetings with the CW, the defendant specifically discussed others who were involved in his obstruction scheme. Indeed, the defendant was intercepted over court-authorized wiretaps discussing his scheme to obstruct justice.

      Despite the defendant's failure to make the requisite showing of particularized need, and despite the substantial concern for further obstruction, the Government has agreed to provide a list of witnesses two weeks before trial. That is beyond what is required and more than reasonable.

**II.     Relevant Factual Background**

On April 14, 2013, defendant Frederic Cilins was arrested for obstructing a federal investigation into bribery of government officials in Guinea. The defendant was indicted on April 25, 2013. As the Court is already familiar with some background in this case from previous proceedings, the following is a brief summary of the facts pertaining to the defendant's request for early disclosure of the Government's witness list.

   **a.     The Defendant's Obstruction Of The Grand Jury Investigation And The FBI Investigation**

The defendant's attempt to obstruct the grand jury and FBI investigations, as alleged in the Indictment and described in an underlying complaint, was brazen and determined. The defendant traveled to Jacksonville, Florida specifically to meet with the CW, who had been subpoenaed before the grand jury, to urge the CW to lie to FBI agents and to give him subpoenaed documents so that he could destroy them. The recordings of meetings between the CW and the defendant reflect a sense of urgency on the part of the defendant – to "destroy, destroy them [the documents under subpoena] completely; to burn them." (Bates 1290.) The defendant's efforts to obstruct the grand jury investigation are laid out in extraordinary detail and in the defendant's own words in audio recordings of meetings and phone calls between him and the CW, all of which were provided to the defendant long ago.

   **b.     The Defendant Continued Obstructing Justice After He Was Arrested**

The defendant did not stop obstructing justice after he was arrested. When U.S. Pretrial Services ("PTS") was compiling information for its bail recommendation to the Court, the defendant lied about his assets. Initially, he admitted that he owned five properties with a total value of approximately $779,000, but explicitly denied owning any other assets. His denial was false. The defendant also co-owned, through LLCs, two other properties that are worth almost

4

$3 million. The defendant's failing to disclose those properties is particularly important because he co-owns them with two others – Michael Noy and Avraham Lev Ran – who are closely tied to the defendant's criminal conduct, as explained below.[1]

The defendant continued to lie during his detention hearing in Florida, which took four days. During the first day of that hearing, the defendant "corrected" his initial statement to PTS about his assets, claiming he owned the two properties discussed above outright – that they were "unencumbered." This too was false: the defendant is *not* the sole owner of the LLCs that own the properties, but co-owns them with Noy and Lev Ran. As further described below, the defendant discussed his obstruction with Noy over intercepted calls. And Lev Ran, the third co-owner of the LLCs owning the $3 million in properties, signed one of the contracts that the defendant bribed the CW to destroy.[2]

Then, at the July 3, 2013 bail proceeding before this Court, the defendant, after several days of bail hearings directly concerning his assets, finally admitted that he had "over a million dollars" in a Bank Leumi account in Israel (despite having no other apparent ties to Israel).

The defendant's repeated lies after his arrest in an effort to secure his pretrial release reflect his continued disrespect for the judicial process. His disrespect for the judicial process creates substantial concern that disclosing the names of witnesses more than two weeks before his obstruction trial will lead to further obstruction by the defendant and by others.

---

[1] Additionally, although the defendant admitted that he had one French passport, he did not admit that he owned a second French passport. Although his having two passports is moot now because he has been detained, that fact was crucial during his detention proceedings. If the Court had released the defendant and seized only one of his passports, he could have used his second passport to flee the United States.

[2] Bank records corroborate that Lev Ran signed the contract. On July 21, 2010, Lev Ran transferred $149,970 from a bank account in Israel to the CW's bank account in the United States. Approximately two weeks later, Lev Ran transferred $99,970 from the same account in Israel to the same account in Florida.

5

### c. Other People Were Involved In The Defendant's Efforts To Obstruct The Grand Jury And FBI Investigations

The defendant stated, during the December 6, 2013 status conference, that there was no risk of additional obstruction because he has been in custody since being arrested last year. (Status Conf. Tr. 13:9-13, Dec. 6, 2013.). The defendant is not, however, the Government's only concern. During his meetings with the CW, which were recorded, the defendant explicitly stated that he was working with others to obstruct the grand jury proceeding and FBI investigation. For example, during a meeting just three days before his arrest, the defendant told the CW that he was acting at the direction of someone else:

> "I went specially to see him [a co-conspirator, "CC-1"], to have – talk about all of this very clearly. I always told him, I always told him. Again [noise] last week, I told him, [whispering] . . . [The CW] will never betray you – [the CW] will never give away any documents whatsoever. . . . 'Listen – '*He told me, 'That's good, but I want you to go see – but I want you to destroy these documents.' He told me, 'Okay, you go – since you want – I want you to tell me, 'I saw that the documents [noise] were destroyed; it's over, there are no more documents.*'" (Bates 001299 (emphasis added).)

The defendant later reiterated that he was acting at the direction of others, telling the CW that: "*what I was asked to do* is to watch when the documents are destroyed. That's why I asked you if you want to go together; to see, to be a hundred percent sure that everything is destroyed and [whispering] that nothing is dispersed. So if you want us to do this today, we can get it done today." (Bates 001294 (emphasis added).) During that meeting, the defendant referred to CC-1 as "the big boss" and also identified CC-1 by name.

The defendant's statements to the CW were not simple bragging, either. In intercepted calls, the defendant discussed his efforts to bribe the CW and obstruct the investigation with Noy, one of the defendant's co-owners of the LLCs that own the Florida real estate, as discussed above. On April 11, 2013, just days before the defendant was arrested, he gave the CW a false declaration, which he referred to as an "Attestation," for the CW to sign. Then, the defendant

6

called Noy and told Noy of his efforts to obstruct the government's investigation. During this call, the defendant told Noy that "[the CW] has left, the document is done and signed." The defendant also told Noy that investigators had confronted the CW about the bribery scheme. Noy asked what the CW had told the investigators and how the meeting ended. The defendant, concerned that his phone had been wiretapped, later said that "one should not talk too much on the phone."

Later that day, April 11, 2013, the defendant met the CW again to retrieve the documents that he sought to destroy, including one signed by Lev Ran, the other co-owner of the LLCs that own the $3 million in real estate. After the CW left, the defendant called Noy to update him on his progress. During that call, the defendant said "I will be back on Saturday because not everything was here, so I have to come back." Later in the call, Noy asked "did [the CW] agree to give you everything?" The defendant replied "Yes, it's done deal, it's done deal."

### III. Applicable Law

It is well-established Second Circuit law that "[t]he prosecution [is] under no obligation to give [a defendant] advance warning of the witnesses who [will] testify against him." *United States* v. *Alessi*, 638 F.2d 466, 481 (2d Cir. 1980) (citing *Weatherford* v. *Bursey*, 429 U.S. 545, 559 (1977)). Although the Court may grant a defendant's request for pretrial disclosure of a witness list, the Government is not required to produce the names of any witnesses or a trial witness list this far in advance of trial "in the absence of any particularized showing of need by the defense." *United States v. Minaya*, 2012 U.S. Dist. LEXIS 68613, 8-9 (S.D.N.Y. May 14, 2012) (citing *United States v. Yu*, 1994 U.S. Dist. LEXIS 10894, 1994 WL 414352, at *2 (S.D.N.Y. Aug. 8, 1994)); *see also United States v. Feola*, 651 F. Supp. 1068, 1138 (S.D.N.Y. 1987) (Brieant, J.) (collecting authorities), aff'd, 875 F.2d 857 (2d Cir. 1989). "The burden is on

the defendants to make some particularized showing of need, beyond the obvious assertion that such a list would facilitate preparation for trial." *United States v. Pastor*, 419 F. Supp. 1318, 1330 (S.D.N.Y. 1976).

Moreover, in addition to the required showing of a "particularized need," a defense request for pretrial disclosure of a witness list should be denied absent a specific showing that disclosure is both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case. *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975) (holding that district court "committed reversible error in sustaining without meaningful explanation the defense's motion for pretrial discovery of the identity of the government's witnesses despite both the presence of specific evidence of the need for concealment and the absence of specific evidence of the need for disclosure"). The defendant cannot rely on only an "abstract, conclusory claim that such disclosure [is] necessary to [his] proper preparation for trial." *United States* v. *Solomonyan*, 452 F. Supp. 2d 334, 353 (S.D.N.Y. 2006) (quoting *Cannone*, 528 F.2d at 301-302).

### IV.   Argument

Defendant's request for disclosure of the Government's witness list more than two weeks before trial should be rejected because he cannot show any "particularized need" for such early disclosure and because the facts demonstrate a substantial risk of further obstruction by the defendant and his associates.

#### a.   The Defendant Cannot Demonstrate A Particularized Need For Pretrial Disclosure Of The Government's Witnesses.

The defendant cannot meet his burden to show a "particularized need" for disclosure of the Government's witnesses more than two weeks before trial. This case is not complex. It is about the defendant's efforts to obstruct a grand jury and FBI investigation by bribing a specific

individual – the CW, a person the defendant has known for years and with whom the defendant is very familiar – to secure the destruction of documents under subpoena by a grand jury to ensure that the CW would lie to FBI agents about the CW's role in the bribery.  The defendant thus already knows the identity of one of the government's likely witnesses.  Moreover, the defendant has hours of audio recordings between himself and the CW detailing his efforts at obstruction.[3]

Courts in this district regularly deny defendants' requests for early disclosure of the Government's witnesses in cases just like this one.  *See, e.g., Cannone*, 528 F.2d at 301; *United States v. Remire*, 400 F. Supp. 2d 627, 633 (S.D.N.Y. 2005) ("The only showing of need proffered by Remire is that which is common to criminal defendants: the desire to prove his defense through the government's witnesses.  This does not amount to the kind of particularized need that would warrant the discovery requested."); *United States v. Russo*, 483 F. Supp. 2d 301, 309 (S.D.N.Y. 2007) (denying defense request for pretrial disclosure of Government's witnesses where "[d]efendants merely argue that given the complexity of the case, disclosure of the government witness list will level the playing field"); *United States v. Washington*, 947 F. Supp. 87, 89 (S.D.N.Y. 1996) (denying defendant's request for production of witness names even though the alleged crimes were non-violent, the case mainly involved "documentary evidence that is within the Government's control," the alleged offenses were spread over two years and the defendant had "extremely limited funds to devote to his defense").

Despite any particularized need in this straightforward case, the Government has agreed to produce a list of witnesses to the defense two weeks before trial.  That agreement goes beyond what is required and the Court should deny the defendant's request for even earlier disclosure.

---

[3] At the Court's direction, the Government will produce final translations and designate the portions of the transcripts that it will use at trial six weeks before trial.  Additionally, the government will disclose its witnesses' 3500 materials two weeks before trial.

9

      **b.**      **This Case Presents Substantial Concerns that Early Disclosure of the Government's Witnesses Will Result in Further Obstruction.**

Disclosure more than two weeks before trial is not reasonable in this case because there is a substantial risk that the defendant – or others – will continue to obstruct justice by interfering with the government's witnesses. The risk of witness tampering exists in any criminal trial, but that risk increases in cases like this one where: (1) the defendant faces charges that he already engaged in brazen efforts to obstruct a grand jury investigation and an FBI investigation; (2) the defendant continued to lie after his arrest in an effort to secure pretrial release; and (3) the defendant was working to obstruct justice together with others, who remain at large, when the defendant attempted to bribe the CW to destroy subpoenaed documents and lie to the FBI.

For example, in *United States v. Kaplan*, 2003 U.S. Dist. LEXIS 21825 (S.D.N.Y. Dec. 8, 2005), the court addressed a similar case and denied a defendant's motion for disclosure of a witness list. *Id.* at *60-62. The Court stressed that because the defendant was charged with witness tampering, a grand jury found probable cause to believe that he had, in fact, tampered with a witness and relied solely on that fact to deny the defendant's request for pretrial disclosure of the Government's witnesses. *Id.*[4] *See also United States v. Schwimmer*, 649 F. Supp. 544, 550 (E.D.N.Y. 1986) (denying request for witness list because "[e]specially in light of the fact that the instant indictment alleges an endeavor to obstruct a grand jury proceeding, the government's fear [of further obstruction] is not without basis").

---

[4] Notably, in *Kaplan*, the defendant was not charged with committing violent crimes and had never been arrested for or convicted of committing a violent crime. Additionally, the government made no showing that disclosure of the witness list would increase the likelihood that its witnesses might not appear at trial or might be unwilling to testify at trial. Nonetheless, the court denied the defendant's request for a witness list before trial. *Kaplan* thus demonstrates why the defendant's request should be denied even if the court applies the six-factor test set forth in United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978). In *Kaplan*, the Court held that, despite the lack of any violence in the charged offense or in the defendant's background (two of the *Turkish* factors), it was inappropriate to compel the Government to produce a witness list "in view of the fact that there has been a finding of probable cause to believe that Defendant attempted to tamper with a witness in an official proceeding." Kaplan, 2003 U.S. Dist. LEXIS 21825, at *62.

In this case, like in *Kaplan*, the defendant tried to persuade a witness under subpoena by the grand jury to destroy documents and to lie to the FBI. But the risk of further obstruction here is far greater than it was in *Kaplan* because the evidence shows that others were involved in the defendant's obstruction. Moreover, given the involvement of at least these two individuals and the sizable resources available to the organization on whose behalf the defendant was purporting to act, it is likely that others were involved as well.

In light of these facts, including the defendant's obstruction and the involvement of others in that obstruction, the concern for further obstruction and interference with the Government's witnesses is substantial. The defendant's request for disclosure of the Government's witnesses earlier than two weeks before trial should therefore be denied.

## V.   Conclusion

The defendant's request for an order compelling the Government for a list of Government witnesses more than two weeks before trial should be denied.

Dated:  New York, New York
            January 10, 2014

                                                                    Respectfully submitted,

   PREET BHARARA                                JEFFREY H. KNOX
   United States Attorney                              Chief,
                                                                    Criminal Division, Fraud Section
                                                                    United States Department of Justice

 By:   s/ Elisha J. Kobre                    By:   s/ Tarek Helou
       Elisha Kobre                                       Tarek Helou
       Assistant United States Attorney            Trial Attorney
       Telephone: (212) 637-2599               Telephone: (202) 305-3611

11