REDACTED VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                          :
UNITED STATES OF AMERICA,                                 :        Index No. S1 13 Cr. 315 (WHP)
                                                          :
                          v.                              :
                                                          :
FREDERIC CILINS,                                          :
                                                          :
                          Defendant.                      :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# SENTENCING MEMORANDUM
## OF DEFENDANT FREDERIC CILINS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

I.    PERSONAL BACKGROUND ...................................................................... 1

    A.    Early Life and Career ........................................................................ 1

    B.    Loving Husband and Father .............................................................. 3

    C.    Backbone of the Extended Family ................................................... 10

    D.    A Devoted Friend ............................................................................ 13

II.   A SENTENCE OF TIME SERVED IS APPROPRIATE ............................ 15

III.  FORFEITURE AND RESTITUTION ........................................................ 21

IV.   FINE ........................................................................................................ 21

CONCLUSION .................................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Butt v. U.S.,*
   No. 08-CV-3747, 2009 WL 36841 (E.D.N.Y. Jan. 6, 2009) .................................................20

*Mitchell v. United States,*
   526 U.S. 314 (1999).............................................................................................................21

*United States v. Adelson,*
   441 F. Supp. 2d 506 (S.D.N.Y. 2006), *aff'd*, 301 F. App'x 93 (2d Cir. 2008).......................16

*United States v. Amico,*
   486 F.3d 764 (2d Cir. 2007).................................................................................................21

*United States v. Borrajo,*
   465 F. App'x 53 (2d Cir. 2012)............................................................................................21

*United States v. Canova,*
   412 F.3d 331 (2d Cir. 2005).................................................................................................19

*United States v. DiMattina,*
   885 F. Supp. 2d 572 (E.D.N.Y. 2012) .................................................................................16

*United States v. Hawkins,*
   380 F. Supp. 2d 143 (E.D.N.Y.2005), *aff'd*, 228 F. App'x 107 (2d Cir.2007).......................18

*United States v. Oliveras,*
   905 F.2d 623 (2d Cir. 1990).................................................................................................21

*United States v. Rioux,*
   97 F.3d 648 (2d Cir. 1996)...................................................................................................19

*United States v. Thavaraja,*
   740 F.3d 253 (2d Cir. 2014).................................................................................................18

*United States v. Thurston,*
   544 F.3d 22 (1st Cir. 2008)..................................................................................................19

**Constitutional Provisions**

U.S. Const. amend. V.......................................................................................................21, 22

**Statutes**

8 U.S.C. § 1101 ..........................................................................................................19

8 U.S.C. § 1227 ..........................................................................................................19

18 U.S.C. § 981 ..........................................................................................................21

18 U.S.C. § 3553 ................................................................................................. passim

18 U.S.C. § 3624 ........................................................................................................20

18 U.S.C. § 3664 ........................................................................................................21

28 U.S.C. § 2461 ........................................................................................................21

**Legislative Materials**

H.R. Rep. No. 95-720 (1977) ......................................................................................17

**Other Authorities**

Bureau of Prisons, *Change Notice: Community Corrections Center (CCC) Utilization and
   Transfer Procedure*, P7310.04 (1998) ....................................................................20

Bureau of Prisons, *Program Statement: Inmate Security Designation and Custody Classification*,
   P5100.08 (2006) ......................................................................................................20

We respectfully submit this memorandum on behalf of Frederic Cilins in connection with his sentencing, which is scheduled to occur on July 25, 2014.

On March 10, 2014, Mr. Cilins pleaded guilty to one count of obstruction of justice, pursuant to a plea agreement with the government. Although the parties have agreed that the appropriate Guidelines range is 37-46 months of imprisonment, the plea agreement permits Mr. Cilins to argue for a sentence below that range. The defendant has been incarcerated since his arrest on April 14, 2014. On the date of his sentencing, he will have spent more than 15 months in detention. For the reasons that follow, we respectfully urge the Court to impose a sentence of time served.

## I.   PERSONAL BACKGROUND

### A.   Early Life and Career

Frederic Cilins was born in 1962 in the south of France, the second of three sons. His father was a plumber and his mother was a homemaker. Mr. Cilins had a happy childhood. His father worked hard, "help[ing] [their] region recover" during "the post-war period," and the family was close. (J. Escalier Letter, Tab 26.)[1] Mr. Cilins's mother was raised in Italy, and the family visited their Italian relatives frequently, developing bonds that remain to this day. (P. Manca Letter, Tab 14.) His parents instilled in each of their children the values they held dear: "politeness, respect, family, a willingness to work, tolerance, and friendship." (Sebastiana Cilins Letter, Tab 6.) As expressed in the letters written to the Court by family and friends, Frederic Cilins internalized these values and has lived them every day of his life.

After graduating from high school, Mr. Cilins enrolled in the University of Nice. One year later, he married his first wife, Marie-José, and left school to support her. He found work

---

[1]  Under separate cover, we are submitting letters to the Court from family and friends of Frederic Cilins, many of which are cited in this memorandum. For letters not written in English, we are providing the Court with both the original letter and an English translation.

first at a construction supply company and then a plumbing supply company.  He rose quickly, and was responsible for running the majority of the plumbing company's supply chain.  After several years, Mr. Cilins formed his own construction company.  Its initial projects were homes and small apartment buildings.  Over time, his business grew and turned to more substantial projects, including large buildings and large-scale renovation projects throughout the south of France.  The business's success provided Mr. Cilins's family with financial stability, but it took him away from his children, and so he left the company shortly before his youngest child was born.

Mr. Cilins then entered the import/export industry, supplying big supermarkets, such as Tesco and Costco, in Europe and the United States.  More recently, the business extended to Africa.  (C. Penot Letter, Tab 32.)  The work required international travel, but also provided for longer stays at home.  His business colleagues in the Democratic Republic of Congo (D.R.C.) recall him as an "honorable, honest, and respectable" man who "holds the people with whom he works in high regard, no matter what their social status." (P. Tshelo Letter, Tab 23.)  The suffering and poverty Mr. Cilins witnessed on his travels had a significant impact on him.  He began to arrange donations of food and high-quality pharmaceutical products in the D.R.C.  (C. Penot Letter, Tab 32; P. Tshelo Letter, Tab 23; N. N'sayi Letter, Tab 24).  These donations provided much-needed products to hospitals and clinics in that country.  (N. N'sayi Letter, Tab 24; P. Tshelo Letter, Tab 23.)  Mr. Cilins's former African colleagues write that due to this "compassion in the form of acts of generosity toward the needy," (P. Tshelo Letter, Tab 23), Frederic's "humanitarian approach to business has been noted by many people," (N. N'sayi Letter, Tab 24).  At the time of his arrest, Mr. Cilins was still engaged in the import/export business.

### B.   Loving Husband and Father

The center of Mr. Cilins's life is his family.  He has been a constant, devoted presence in the lives of his wife, mother, former wife, children, and extended family.

Mr. Cilins and his first wife, Marie-José, were married in 1983.  (Marie-José Deleau Letter, Tab 7.)  In 1984, they had a daughter, Sandrine.  When Sandrine was still a toddler, Marie-José asked for a divorce.  The separation was traumatic for Mr. Cilins, but Sandrine was his first priority, and he did everything he could to ensure that the divorce did not adversely affect her.  (Sandrine Cilins Letter, Tab 2; Marcel Deleau Letter, Tab 8.)  Marie-José soon remarried.  Her second husband, Marcel Deleau, who had ample opportunity to observe Mr. Cilins after the divorce, notes that the "separation really tore Frederic up and was an enormous distress," but "instead of using his daughter to put pressure on his wife, he did everything to foster his daughter's well-being."  (Marcel Deleau Letter, Tab 8.)  Sandrine, now 30, works as a regional manager for a French telecom company.  Two days before Mr. Cilins's arrest in Florida, she gave birth to a daughter, ███████.  Mr. Cilins has never met his first grandchild.  (Sandrine Cilins Letter, Tab 2.)

After his divorce, Mr. Cilins met Brigitte Bure, with whom he would make his life.  (B. Cilins-Bure Letter, Tab 1.)  While they were only recently married, Frederic and Brigitte have been partners for over 24 years and have raised three young daughters together.  Elisa, age 21, is a business school student in Antibes.  Nina, age 18, recently completed her first year studying law in Nice.  And ███████, recently turned 14, is a middle-school student.

In the words of their close friends Patrick and Marie Conil, "[t]here's some magic ingredient that makes Frederic and Brigitte work well as a couple."  (Patrick and Marie Christine Conil Letter, Tab 33.)  Elisa Cilins observes that her "parents are just as in love as they were in the very beginning, and I couldn't be more proud of them. . . . I hope that my husband someday

will have the same values, the same qualities, and even the same flaws as my dad." (Elisa Cilins

Letter, Tab 3.)



The Cilins's lives have revolved around their daughters, which is apparent to all who know them. Mr. Cilins's mother describes how they raised their children together:

> Frederic is a wonderful father to his daughters. They are the apples of his eye, and he and their mother have managed to bring them up with due respect for our family values. He has always managed to guide them in their endeavors, support them in their moments of doubt, encourage them, and teach them how to be committed, invested, open-minded, and giving.

(Sebastiana Cilins Letter, Tab 7.) Sandrine, his eldest daughter recalls that, notwithstanding her parents' divorce, her father "was present in all of the defining moments of my childhood: meetings at school with teachers, the end-of-the-year recitals that are so important when you're little, the choice of orientation in studies." (Sandrine Cilins Letter, Tab 2.) Her mother, Marie-José, describes how at her request he did not hesitate to cut short a trip to attend a parent-teacher conference. (Marie José Deleau Letter, Tab 7.)

Mr. Cilins's daughters describe him as a generous and supportive man, a role model, who encouraged their ambitions and taught them to believe in themselves. As Sandrine writes:

> My father is the person I can count on when things go wrong, when I think that there is no answer: he always knows how to make me see things differently, take a different angle that helps me think through it, or realize that I was focusing on something unimportant. And no matter what he is doing at the time, he knows how to make himself immediately available to me, but also to each of my three sisters.

(Sandrine Cilins Letter, Tab 2.) Elisa also relies on her father for advice:

> He'll always analyze the big picture in order to be able to offer the best possible advice. Above all else, he'll consider my happiness. He's someone who really tells it like it is. Also, he constantly encourages me to move forward, to make my dreams come true. When I lose heart, lose my ambition, I know that, by talking things out with him, I'm going to be a lot stronger. It's a really great quality.
> ████████████████████████████████████████████████████████████

(Elisa Cilins Letter, Tab 3.)

Mr. Cilins taught his daughters not to take what they had for granted. He used his travel experiences as a touchpoint for these lessons, sharing his impressions of Africa. Sandrine quotes

him as saying, "I could record it on video so that you realize, so that you see these children and this misery, but no, I cannot do that; it would be almost like voyeurism, and it hurts too much." (Sandrine Cilins Letter, Tab 2.)  Before Frederic left for business trips to Africa, he would ask his daughters to donate their own school supplies, stuffed animals and toys so that he could give them to children there, (Elisa Cilins Letter, Tab 3), thus imparting valuable lessons about the world and the need to help those less fortunate.  These lessons about helping others also took place close to home.  Elisa recalls a scary moment when the family was on a wharf at a harbor and a pregnant woman slipped and fell into the water.  As onlookers, including the woman's husband, stood by, Mr. Cilins jumped into the water to rescue the woman.  (Elisa Cilins Letter, Tab 3.)  Most importantly, Mr. Cilins's children learned from his example.  As his daughter Nina writes, "He's always thought of others before thinking of himself; he's a dedicated individual who wants to do good with regard to everyone and everything around him."  (N. Cilins Letter, Tab 4.)

      Given their relationships with him, it is not surprising that each of Mr. Cilins's daughters has experienced trauma from their father's separation from the family.  Sandrine's daughter, ▇▇▇▇▇▇, is now over a year old, but has never met her grandfather.  ▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ She and her partner have decided to wait until his return before they get married and baptize their child, as such events are "inconceivable" without her father.  (Sandrine Cilins Letter, Tab 2.)

Elisa, the oldest of Fred's daughters with Brigitte, feels that she is responsible for cheering her sisters' spirits during her father's incarceration. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████

Nina, the 18 year-old, feels that she is living "a life put on hold." (N. Cilins Letter, Tab 4.) She graduated from high school after her father's arrest. ███████████████

███████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████





In April, Brigitte brought ███████ to visit her father for the Easter holiday. Because of administrative issues at the MDC, they were kept waiting with other visitors outside the jail for two and a half hours and then told there would be no visitation that day. Because Mr. Cilins is allowed visitors only on Mondays, Brigitte and ███████ were unable to see him before they had to return to France. (B. Cilins-Bure Letter, Tab 1.) ██████████████████

2 ████████████████████████████████████
██



### C.   Backbone of the Extended Family

Mr. Cilins is the family patriarch: the organizer of family gatherings, the host for holidays, and the relative all call when they need advice. His younger brother writes that "Frederic has always been the one who stands up in difficult times to comfort everyone and bring [the family] together to maintain the unity and solidarity that are necessary in any family." (Bernard Cilins Letter, Tab 10.) His father-in-law writes that while Mr. Cilins may not be the family's oldest member, he is the most reliable: "[I]t's always been Fred, who, owing to his presence, his sense of responsibility, and the affection that he has always shown, has always held an important spot, not only within the family but also within his circle of many friends who have remained true to us despite the pitfalls that life has had in store for us." (Jean Bure Letter, Tab 15.)

Frederic and Brigitte frequently hosted large family gatherings, and Christmas has always been a particularly boisterous and joyous event. (Bernard Cilins Letter, Tab 10; Nina Cilins Letter, Tab 4.) This year, the family struggled to celebrate. Nina describes the change:

> My holiday memories date back to when I was a little girl; I recall the whole family gathered together, about thirty people seated at a huge table, the presents under the tree, and the guarantee of a pleasant environment. ██████████████



(Nina Cilins Letter, Tab 4.)

Mr. Cilins's absence is all the more difficult for the family given the sudden death of his own father in December 2012, just a few months before his arrest. While he and his younger brother, Bernard, were visiting their parents, their father collapsed from a heart attack. Bernard tried to save him, but he died before rescue workers arrived. (Bernard Cilins Letter, Tab 10.) Their older brother, Pascal, writes that in the days that followed, "it was Fred who provided support and strength to the other family members," even as he struggled with his own pain. (Pascal Cilins Letter, Tab 12.)



After his father's death in late 2012, Mr. Cilins visited his 77-year-old mother Sebastiana nearly every day. (Sandrine Cilins Letter, Tab 2.) He managed many of her day-to-day affairs and helped her grieve. (Sebastiana Cilins Letter, Tab 6.)



Mr. Cilins's life-long devotion to his family has had a profound impact on all of its

members.

Mr. Cilins's nieces

and nephews greatly appreciate his mentorship.

And as an uncle in Italy writes, Mr. Cilins traveled far and wide to be with ill

family members:

> [W]henever anyone in our family was seriously ill, he always came to see us,
> showing great attention and sensitivity and managing to keep up with both his
> work demands and the needs of his relatives.

(P. Manca Letter, Tab 14.)  Time and again, Mr. Cilins has been there for family members in

need.

Indeed, the importance of family to Mr. Cilins is proven by the relationships he

developed and maintained with his first wife and her family.  After their divorce, Mr. Cilins

made their daughter's welfare his priority. (Marie-José Deleau Letter, Tab 7; Marcel Deleau

Letter, Tab 8.)  Sandrine writes:

> [M]y experience as a child whose parents are divorced was often wished for, and
> it surprised many of my friends who had not been so lucky.  We even rebuilt two
> very close families, and time has only strengthened the bonds.  What a joy to
> know that my father can talk with my mother and her husband, share a meal
> together, wish each other the best for the holiday season, and gather together for
> my birthday.

(Sandrine Cilins Letter, Tab 2.)  Marie-José, her second husband Marcel, and their son, Jean-

Christophe, clearly share Sandrine's views.  Mr. Cilins has always provided emotional support to

their family just as he has to his own.  ███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████  Even for Marie-José,

"[l]ife has stopped since he is no longer here. . . . Frederic gave so much love to his family that

his absence is inconceivable.  We love him so much."  (Marie-José Deleau Letter, Tab 7.)  And

as her son, Jean-Christophe, explains: "He adores us and has worked so hard to offer us the best.

. . . I have often heard it said that Frederic would have liked to have had a little boy.  He is not

my father, but like a son I hope that he will come home soon."  (Jean-Christophe Deleau Letter,

Tab 9.)

### D.  A Devoted Friend

Not surprisingly, Mr. Cilins maintains many powerful friendships.  He is loyal, generous

with his time, and willing to help with any problem, without judgment.  ████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████  He has supported close friends through the

death of a spouse, and difficult divorces, frequently inviting those in need of warmth and comfort

to spend time with his family. (Sandrine Cilins Letter, Tab 2; J. Barraja Letter, Tab 27; J. Escalier Letter, Tab 26.) He welcomed his friend Jacques Escalier, who after a divorce would have been alone on Christmas for the first time, to spend the holiday with his family. Jacques writes that, on that day, "instead of being stuck home alone, I spent a happy day with a family whose kindness and love got me through that difficult period in the sweetest way possible." (J. Escalier Letter, Tab 26.)

Mr. Cilins is also generous with his time. In one memorable example of his devotion to his friends, he drove 400 kilometers to serve as an Italian interpreter for French friends whose car had been detained in Italy. (J. and C. Croci Letter, Tab 29.) In another, when Bernard Borasci lost his job and began suffering from self-doubt, Mr. Cilins called every day to reassure him. (B. Borasci Letter, Tab 28.) To each of these friends, Frederic gave his support and his time "without expecting anything in return." (B. Borasci Letter, Tab 28.)

And those friends know that Mr. Cilins can be relied upon at the most difficult times.



Mr. Cilins's loyal dedication to Fiona and her family is not unusual.



## II.   A SENTENCE OF TIME SERVED IS APPROPRIATE

The parties and the Probation Department have agreed that the Guidelines range applicable in this case is 37 to 46 months' imprisonment.[3]  But, as the Court is well aware, the Guidelines calculation is only the beginning of the analysis.  18 U.S.C. § 3553(a) directs the Court to "impose a sentence sufficient, but not greater than necessary" to serve the ends of justice, taking into consideration several factors in addition to the Guidelines.  We respectfully submit that, taking into account the relevant Section 3553(a) factors, a below-Guidelines sentence of time served would appropriately serve the ends of justice in this case.

"The nature and circumstances of the offense," together with the "history and characteristics of the defendant" favor lenient treatment.  *See* 18 U.S.C. § 3553(a)(1).  Mr. Cilins

---

[3]  We refer the Court to the plea agreement and the Presentence Report for the relevant Guidelines calculation.

has pleaded guilty to one count of obstructing an FBI investigation. He entered the United States, learned of a federal investigation and attempted to impede it. He accepts full responsibility for that conduct. And while there is no question that the offense for which he has been convicted is serious, and that imprisonment is warranted, the Court should fashion a sentence that also accounts for the extraordinarily positive impact Mr. Cilins has had on the lives of his family and friends, and the pain his incarceration far from home has caused them. As Judge Rakoff has written:

> Th[e] elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had, in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'

*United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006), *aff'd*, 301 F. App'x 93 (2d Cir. 2008).

Frederic Cilins is a good man. The letters we have submitted to the Court and summarized briefly above speak eloquently to his strong character as well as to his generous, compassionate nature. He is as "the pillar" of his extended family (B. Cilins-Bure Letter, Tab 1; P. Cilins Letter, Tab 12; A. Perigard Letter, Tab 11), and the a source of comfort and good counsel to numerous family members and friends. The letters also allow a glimpse into the world of an extraordinary parent, providing intimate details demonstrating his unwavering dedication to his wife and four daughters, and their deep love for him. *See supra* I. B. If there is a common theme, it is that Mr. Cilins has been, and remains, a positive and powerful force in the lives of many. The extraordinary testimony offered by Mr. Cilins's family and friends detailing the good life he has led militate for a below-Guidelines sentence. *See Adelson*, 441 F. Supp. 2d at 513-14 (awarding below-Guidelines sentence based in part on defendant's "exemplary" history and characteristics, described in letters from family and friends); *United States v.*

-16-

*DiMattina*, 885 F. Supp. 2d 572, 582 (E.D.N.Y. 2012) (below-Guidelines sentence supported by "numerous letters attesting to [defendant's] good character and many acts of charity").

The letters also reveal the hardship Mr. Cilins's absence from his loved ones in France and Italy has caused: ████████████████████████████████████████████ ████ ; how his grandchild has spent the first year of her life without having met the grandfather; how his wife and children have suffered without him. *See supra* I. B. ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████ As Mr. Cilins's nephew, Michael, has written, without him, "[his family] is truly lost." (M. Cilins Letter, Tab 17.)

These hardships are exacerbated by the fact that Mr. Cilins is incarcerated in a foreign country. As the House Judiciary Committee has noted, "[i]ncarceration in one's own country is severe enough punishment. Service of a custodial term in a foreign jail creates special hardships upon the individual offender, and his family." Transfer of Offenders to or from Foreign Countries, H.R. Rep. No. 95-720, at 26 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3146, 3149. Mr. Cilins's wife, usually accompanied by one of his daughters, has traveled to the United States to visit him for what is usually only an hour a month, but has not always been permitted a visit. (B. Cilins-Bure Letter, Tab 1.) ████████████████████████████████████████████ ████████████████████████████████ And while an occasional longer visit to the

United States by his older children may be possible,[4] ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ The hardship on Mr. Cilins's family, and particularly to

████, that would be caused by further incarceration counsels strongly in favor of leniency. *See,*
*e.g.*, *United States* v. *Thavaraja*, 740 F.3d 253, 260-62 (2d Cir. 2014) (affirming substantial

variance awarded after district court considered defendant's family circumstances, including the

fact that defendant was a foreign national incarcerated far from his family, which was in

Indonesia and Sri Lanka); *United States* v. *Hawkins*, 380 F. Supp. 2d 143, 165, 175-76

(E.D.N.Y.2005), *aff'd*, 228 F. App'x 107 (2d Cir.2007) (below-Guidelines sentence imposed, in

part, because a long period of incarceration would have a "destructive" impact on the

defendant's relationship with her child).

Finally, as discussed at greater length above, the letters to the Court describe the

numerous ways Mr. Cilins has helped others in his life. Moved by what he saw on his numerous

visits to Africa, he arranged for the donation of food and pharmaceutical products in the D.R.C.

to help combat the poverty and suffering there. *See supra* p. 2. Based on his experiences

traveling on that continent, he taught his daughters the importance of giving back, encouraging

them to donate their own toys, books, and school supplies to African children, which he would

deliver on their behalf. *See supra* pp. 5-6. And he has always answered the call from friends in

need, going out of his way to provide financial and emotional support to assist them at the most

difficult times in their lives. █████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

---

[4] Elisa Cilins has recently arrived in the United States for a stay of several weeks during her
summer break from school and has been able to visit her father on consecutive Mondays.

████████████████████ His willingness to give of himself is a reflection of his deep commitment to others, instilled in him since childhood, and should be considered by the Court in determining the appropriate sentence. *See United States v. Canova*, 412 F.3d 331, 359 (2d Cir. 2005) (affirming significant downward departure based on defendant's good works, such as assisting a woman who fainted on the street); *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (affirming downward departure based in part on defendant's charitable fund raising efforts); *United States v. Thurston*, 544 F.3d 22, 26 (1st Cir. 2008) (affirming substantial downward variance awarded because of defendant's "charitable work, community service, generosity with time, and spiritual support and assistance to others" even though the court had determined in an earlier opinion, *United States v. Thurston*, 456 F.3d 211, 219 (1st Cir. 2006), that the good works were not "exceptional").

The Court should also take into account that further incarceration is not necessary to "reflect the seriousness of the offense," "afford adequate deference," or "protect the public." 18 U.S.C. § 3553(a)(2). Mr. Cilins briefly entered this country and committed a crime. He was immediately arrested. By the time of sentencing Mr. Cilins will have been incarcerated for more than 15 months. At the end of his sentence, he will be deported. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (conviction of an aggravated felony is a ground of deportability); 8 U.S.C. § 1101(a)(43)(S) (defining obstruction of justice as an aggravated felony). This is a substantial punishment that clearly demonstrates the seriousness of his offense. Moreover, his well-publicized incarceration has sent a clear warning to anyone considering tampering with the criminal process that swift and serious punishment will follow, and made it clear to foreign nationals that if they come into this country and obstruct an investigation, they may not leave. Nor is additional imprisonment required for specific deterrence or protection of the public. Mr. Cilins's imprisonment far from his family has had a significant impact on him, and the suffering

his crime has caused his family has devastated him. He must live with the shame of essentially having abandoned his wife, children, and the many family members who rely on him and desperately need him. His actions have deeply injured them. A longer prison sentence is simply not necessary to deter him.

Finally, the Court should consider the impact that Mr. Cilins's status as a deportable alien would have on the conditions of his confinement and the length of time he will spend in prison. See *Butt v. U.S.*, No. 08-CV-3747, 2009 WL 36851, at *4 (E.D.N.Y. Jan. 6, 2009) (noting that a sentencing court may consider collateral consequences of status as a deportable alien under the Section 3553(a) factors). As a deportable alien, Mr. Cilins cannot serve his sentence in a minimum security prison. *See* Bureau of Prisons, *Program Statement: Inmate Security Designation and Custody Classification*, P5100.08 at Ch. 5 p. 9 (2006) (a deportable alien "shall be housed in at least a Low security level institution"). In addition, he is not eligible for home confinement or early release to a halfway house. *See* Bureau of Prisons, *Change Notice: Community Corrections Center (CCC) Utilization and Transfer Procedure*, P7310.04 at p. 10 (1998) (deportable aliens "shall not ordinarily participate in" Community Correction Center ("CCC") programs, which include home confinement and placement in a halfway house). Pursuant to 18 U.S.C. § 3624(c), an inmate can spend a period of either six months or 10% or their sentence, whichever is less, in a CCC placement. Because Mr. Cilins is not eligible for these programs, his sentence will likely be a harsher jail term than that of an American citizen who is sentenced to the same time in prison. Given the requirement to consider the kinds of sentences available and the need to avoid unwarranted disparities in sentencing, see 18 U.S.C. § 3553(a)(3) and (6), we ask the Court to take this potential for inconsistency into account in imposing sentence.

III.   **FORFEITURE AND RESTITUTION**

In his plea agreement, Mr. Cilins agreed to forfeit all property that constitutes or is derived from proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. For the purposes of this offense, "proceeds" is defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). The only "proceeds" of Mr. Cilins's obstruction were the $20,000 in cash he had on his person when he was arrested and that he offered to give to the government's cooperating witness to impede the investigation. In his plea agreement, Mr. Cilins has agreed to forfeit that amount.

Restitution is governed by the Mandatory Victim Restitution Act of 1996, which provides that the Court may use its discretion to order restitution to compensate the victims of an offense. 18 U.S.C. § 3664. As there are no compensable victims in this case, restitution is not applicable.

IV.   **FINE**

The range of a fine for this offense is from $7,500 to $75,000. U.S.S.G. § 5E1.2(c)(3). Mr. Cilins agrees that a fine in that range would be appropriate.[5]

---

[5] In light of the continuation of the underlying FCPA investigation, Mr. Cilins declined to provide the financial affidavit to the Probation Department, asserting his Fifth Amendment privilege. It is settled that a defendant who invokes that privilege at sentencing cannot be penalized by loss of the downward reduction for acceptance of responsibility or by any negative inference. *See Mitchell v. United States*, 526 U.S. 314, 322 (1999) (Fifth Amendment provides a "safeguard against judicially coerced self-disclosure" that extends to sentencing (internal quotation marks omitted)); *United States v. Borrajo*, 465 F. App'x 53, 55 (2d Cir. 2012) ("A district court may not draw a 'negative inference' from a defendant's exercise of his right under the Fifth Amendment not to testify, whether at trial or in connection with sentencing.") (quoting *Mitchell*, 526 U.S. at 327-28); *United States v. Amico*, 486 F.3d 764, 779-80 (2d Cir. 2007) (noting that defendant who asserts Fifth Amendment privilege and declines to provide financial information to the Probation Office prior to sentencing would remain eligible for acceptance of responsibility reduction under § 3E1.1); *United States v. Oliveras*, 905 F.2d 623, 626-28 (2d Cir. 1990) (holding that defendant cannot be denied acceptance of responsibility reduction at

## CONCLUSION

For the foregoing reasons, we respectfully urge the Court to impose a sentence of time served, which, we submit, would be a sentence sufficient but not greater than necessary to serve the ends of justice in this case.

Dated: New York, New York
July 11, 2014

COOLEY LLP

By: ___/s/ William J. Schwartz_____
William J. Schwartz
Annika M. Goldman

1114 Avenue of the Americas
New York, New York  10036
Phone:  (212) 479-6000
Email:  wschwartz@cooley.com

*Attorneys for Defendant Frederic Cilins*

and

Michelle Smith
Law Office of Michelle Smith, P.A.
827 Menendez Court
Orlando, Florida  32802-1788
Phone:  (407) 601-6700

---

sentencing because he asserted Fifth Amendment privilege in response to questions regarding conduct that he had not pleaded guilty to or been convicted of); *see also* U.S.S.G. § 3E1.1 cmt. n. 1(A) ("[A] defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under [§ 3E1.1](a).  A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection.").