```
                     UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
                         JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,      Jacksonville, Florida

          Plaintiff,           Case No. 3:13-mj-1087-JRK

-vs-                           Thursday, April 18, 2012

FREDERIC CILINS,               11:02 a.m.

          Defendant.           Courtroom 5D
_____


              DIGITALLY RECORDED DETENTION HEARING
           BEFORE THE HONORABLE JAMES R. KLINDT
                UNITED STATES MAGISTRATE JUDGE


GOVERNMENT COUNSEL:

     Kelly Karase, Esquire
     U.S. Attorney's Office
     300 North Hogan Street, Suite 700
     Jacksonville, FL  32202

DEFENSE COUNSEL:

     Michelle Smith, Esquire
     Law Office of Michelle P. Smith
     P.O. Box 1788
     Orlando, FL  32802-1788

COURT REPORTER:

     Shelli Kozachenko
     221 North Hogan Street, #185
     Jacksonville, FL  32202
     Telephone:  (904) 301-6842
     Fax:  (904) 301-6846

     (Proceedings recorded by electronic sound recording;
transcript produced by computer.)
```

1  confidential witness that was surveilled by law enforcement
2  and recorded.  The defendant offered the confidential witness
3  $300,000 for the witness's production of the originals of the
4  documents and for the witness to execute a contract in which
5  the witness agreed to deny the existence of any prior
6  contracts or prior receipt of money in connection with mining
7  concessions.
8         In a later recorded and surveilled face-to-face
9  meeting --
10        THE COURT:  When was the first recording that you
11 referenced?
12        MS. KARASE:  The first face-to-face meeting, Your
13 Honor?
14        THE COURT:  Yes.
15        MS. KARASE:  March 25th.
16        THE COURT:  All right.
17        MS. KARASE:  There was a second face-to-face
18 meeting on April 11th in which this defendant advised that
19 same confidential witness that the witness would be paid a
20 total of $1 million for compliance with the terms that
21 Mr. Cilins had dictated.
22        He specified that $200,000 would be paid up front.
23 An additional $800,000 would be paid at a later date.  He
24 provided the confidential witness with a written document
25 called an attestation in which he required -- in which the

1  document required the witness deny any contracts for mining
2  concessions and deny ever receiving any money.
3           Paragraph 21 of the criminal complaint sets forth
4  the specifics -- some of the specifics of the attestation.
5           THE COURT:  What page is that?
6           MS. KARASE:  It's on page 15, Your Honor, and
7  carries over to 16.
8           The confidential witness provided a copy of this
9  document to law enforcement after the end of the meeting.
10 There were a lot of specifics mentioned during that meeting
11 as well, including this defendant's agreement to get the
12 confidential witness some immediate cash.
13          They agreed to meet again, and a meeting was
14 arranged on April 14th, 2013, which is the day that the
15 defendant was taken into custody.  The defendant arrived at
16 the meeting and had in his possession approximately $20,000
17 in United States currency.
18          According to the report that this defendant
19 provided to pretrial services, $20,000 in U.S. currency is
20 more than half of his annual income.  He provided no other
21 source for annual income that he had.  Further, he identified
22 with great specificity five properties that he owns in
23 Florida.  This included approximate market value, rental
24 income, approximate location, and the current status, be it
25 occupied or unoccupied.

```
 1              The total value of the five properties he told us
 2   about was $779,000.  The government has reasons to believe,
 3   specifically based on my own conversations with the
 4   defendant's attorney, Ms. Smith, that the defendant actually
 5   has several million dollars' worth of property in Florida,
 6   and this is unencumbered property that he somehow has managed
 7   to acquire on his $32,000 salary that he earns in France,
 8   and, of course, that's converted to dollars.  It's
 9   concerning, Your Honor, that he was dishonest with pretrial
10   services in identifying the assets that he has.
11              Another and probably the most concerning factor
12   about the circumstances of Mr. Cilins' arrest are that in his
13   possession at the time of his arrest was a French passport.
14   When the agents with the FBI contacted the French consulate
15   to notify the consulate of Mr. Cilins' arrest, they provided
16   the passport number from that French passport.  Now, this is
17   the French passport that Mr. Cilins used to enter the United
18   States, and it bore the entry stamp from when he arrived and
19   several other entry stamps.
20              The French consulate, when -- having run that
21   number, reported that it was not a valid passport, that it
22   appeared to be a fraudulent passport, and that number did not
23   come back to any existing French passport.
24              The agents, being diligent as they are, located a
25   photocopy of a passport in Mr. Cilins' property at the time
```

1  of his arrest.  Although this photocopy bore a photograph of
2  the defendant and his address, the same address that was on
3  the physical passport, it had a different issue date and a
4  different passport number.
5          The agents provided the passport number from the
6  photocopy to the French consulate and confirmed that this
7  was, in fact, a validly issued passport.  Your Honor, we
8  don't know where that physical passport is.  All we know is
9  that there's a photocopy and that at some point it was in
10 existence.
11         Mr. Cilins is not a United States citizen or a
12 legal permanent resident.  In fact, as I've just proffered,
13 he was traveling on a fraudulent French passport at the time
14 that he was arrested.  There's currently an immigration
15 detainer in place because he was here under the visa waiver
16 program.
17         When looking at the factors under 3142(g) of Title
18 18, we examine the nature and circumstances of the offense
19 charged.  This offense was particularly egregious, Your
20 Honor.  This was the interference, continuously and
21 repeatedly, with a pending federal grand jury investigation.
22         As the complaint explains, although he may not be a
23 citizen of this country, Mr. Cilins was made aware of what a
24 federal grand jury is and what its significance is.  He
25 repeatedly instructed the confidential witness to destroy

```
1                         CERTIFICATE
2
3    UNITED STATES DISTRICT COURT )
4    MIDDLE DISTRICT OF FLORIDA   )
5
6
7         I hereby certify that the foregoing transcript is a
8    true and correct computer-aided transcription of my stenotype
9    notes taken at the time and place indicated therein.
10
11        DATED this 18th day of April, 2013.
12
13
14                            s/Shelli Kozachenko_____
                              Shelli Kozachenko, RPR, CRR
15
16
17
18
19
20
21
22
23
24
25
```