```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

         v.                        13 Cr. 315 (WHP)

FREDERIC CILINS,

              Defendant.

------------------------------x
                                   New York, N.Y.
                                   July 25, 2014
                                   2:15 p.m.

Before:

              HON. WILLIAM H. PAULEY III,

                                   District Judge

                       APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
TAREK HELOU
ELISHA KOBRE
     Assistant United States Attorneys

COOLEY LLP
     Attorneys for Defendant
BY:  WILLIAM SCHWARTZ
     ANNIKA GOLDMAN
     MICHELLE SMITH


ALSO PRESENT:  JOSE VOIGT, Interpreter (French)
               CHRISTOPHER MARTINEZ, FBI
```

1                  (Case called)
2            MR. HELOU:  Good afternoon, your Honor, Tarek Helou
3    for the United States.  I'm here at counsel table with
4    Assistant U.S. Attorney Elisha Kobre and FBI Special Agent
5    Chris Martinez.
6            THE COURT:  Good afternoon, Mr. Helou.
7            MR. SCHWARTZ:  Good afternoon, your Honor, William
8    Schwartz from Cooley LLP.  I'm here with my colleague Annika
9    Goldman and with my cocounsel, Michelle Smith.
10           THE COURT:  Good afternoon, Mr. Schwartz.  I note the
11   presence of a French interpreter.  Would you identify yourself
12   for the record.
13           THE INTERPRETER:  Jose Voigt.  Good afternoon, your
14   Honor.
15           THE COURT:  Good afternoon, Ms. Voigt.
16           Please administer the oath to the interpreter.
17           (Interpreter sworn)
18           THE COURT:  Mr. Cilins, are you able to understand
19   what's being said here this afternoon through the French
20   interpreter?
21           THE DEFENDANT:  Yes, your Honor.
22           THE COURT:  Good afternoon.
23           This matter is on for sentencing.  Are the parties
24   ready to proceed?
25           MR. HELOU:  Yes, your Honor.

|  |  |
|---|---|
| 1 | MR. SCHWARTZ: Defendant is ready, your Honor. |
| 2 | THE COURT: Mr. Schwartz, have you reviewed with your |
| 3 | client the presentence investigation report? |
| 4 | MR. SCHWARTZ: I have, your Honor. |
| 5 | THE COURT: Are there any factual matters set forth in |
| 6 | the report that you believe warrant modification or correction? |
| 7 | MR. SCHWARTZ: Your Honor, as you may know from |
| 8 | reading the report, we objected to certain paragraphs, the |
| 9 | background paragraphs on several grounds, not all of which are |
| 10 | stated in the report, paragraphs 6 through 12, and the |
| 11 | government has informed me that those were merely meant as |
| 12 | allegations to show the background to the crime, not anything |
| 13 | requiring factual findings.  So we have nothing further. |
| 14 | THE COURT: Very well. |
| 15 | Mr. Helou, does the government believe that there are |
| 16 | any modifications that need to be made with respect to the |
| 17 | facts in the report? |
| 18 | MR. HELOU: No, your Honor. |
| 19 | THE COURT: Mr. Schwartz, do you wish to be heard? |
| 20 | MR. SCHWARTZ: I do, your Honor. |
| 21 | If it please the Court, I find sentencing |
| 22 | presentations to be the most difficult thing I do as a lawyer, |
| 23 | particularly when I have come to know clients as well as I have |
| 24 | come to know this client during his long stay in our city. |
| 25 | Just at the outset, I have come to know him as the man |

who is portrayed in the letters that the Court has read, a good and serious man who one can admire. He has admitted his crime which occurred during three meetings in Jacksonville, Florida in April of 2013.

In its submission the government begins its submission with the language that he used in committing the crime. That's what the crime was. There is no question about that. We don't dispute the language. He did try to obstruct an investigation. He has pleaded guilty to that. And he is here to be sentenced for that.

The question isn't what were the words he used in committing the crime to which he has admitted. The question is, what is the appropriate sentence for those words and for those actions.

As your Honor knows from everything that has gone on, there is an agreed-to guidelines calculation in this case of 37 to 46 months. To date my client has been incarcerated at the MDC for 15 months. He recently received an evaluation from the MDC which was quite favorable. They evaluate the people that are there.

And one of the things that they said in the evaluation which struck me, knowing him and having read the letters, they said that he is always willing to go the extra mile to help others. The evaluation said he is always willing to go the extra mile to help others. So it is clear that even the prison

authorities have come to know the man that I've come to know and that is known by his family and his friends.

If these 15 months had been his sentence, that he has been serving his sentence and he had received good time, which is clear from the evaluation he would have received, it would have been the equivalent of serving a 17 and a half month sentence, approximately, imposed by the Court. In our memo we have urged the Court to accept that service in custody as the period of incarceration that is sufficient in this case to serve the ends of justice, and we maintain still, your Honor, that time served is the appropriate sentence.

I'm sure that the Court has closely reviewed that memo and, more importantly, I am quite confident that the Court has read the letters, many of them quite moving and extraordinary.

By the way, your Honor, as I've learned a little bit in my cultural education in this case, particularly difficult for French nationals to write the kinds of letters we have become accustomed to as Americans to express themselves to a stranger as openly as they have expressed themselves to the Court. And I think that says something about Mr. Cilins, that they have been willing to bear themselves in this way.

I note for the Court that Mr. Cilins' wife, one of his daughters, and his brother are in the courtroom today and that his youngest daughter, Emma, whom I am sure your Honor has read about, is close to the courthouse awaiting your Honor's

1  decision.

2  I am not going to reargue or repeat in any detail what
3  we have said in our memorandum other than to emphasize that, as
4  the letters show, as I have come to learn, as the MDC
5  authorities have themselves come to learn, Fred Cilins is a
6  decent and beloved man with powerful ties to his family and to
7  his friends. He has, because of those ties, suffered greatly
8  being thousands of miles away from them, and I think, more
9  importantly, has suffered even more greatly because of his
10 knowledge of what he has done to them and, in particular, to
11 his family, as your Honor has read.

12  It's been very severe punishment. I'm not at all
13 trying to suggest that there is anything inappropriate about
14 the fact that he has been incarcerated. This is a crime, I
15 think he would agree, for which incarceration is very
16 appropriate. All of us who practice in the criminal justice
17 system need to know that it is untainted.

18  But he has been punished and punished greatly. And
19 it's not a case, as the government and I understand and
20 expected them to say in their memorandum what they said, but
21 this is not a case of just a generic foreigner. Yes, we know
22 our prisons are filled, sadly, with foreign nationals. Not a
23 case of a generic foreigner whose family is suffering and can
24 be viewed, that happens to everybody. It happens to every
25 prisoner.

But we think in this case we have presented the Court with particulars that demonstrate that there is something about Fred Cilins that requires the Court to take into account punishment he has received as a result of what he's done to his family and to account for that in the sentence that the Court gives.

We think that, as I said, time served and, at a minimum, a sentence below the guidelines is what's warranted.

We all know that since Booker the law has been that the guidelines are advisory. What's interesting, your Honor, is the practice of the courts in looking to the guidelines and how they have looked at them. And I think for this case what's particularly interesting is how the guidelines have played out in this district, after Booker.

Two days ago the sentencing commission released its latest report. And it does an analysis of the United States courts, district courts, district by district, in extraordinary details. It's the first time I ever looked at one of these things. I was actually amazed at the work that goes into it. I looked at what is happening here, because this is the courthouse that I had to appear in this week and this is the courthouse that I spend most of my life in.

If the Court will permit just a couple of statistics. And we are talking about the period from October 2013 through March 2014, the last quarter of the calendar year of 2013 and

the first quarter of the calendar year of 2014. If you look at all sentences in this district, and there were several thousand -- 751 sentences, a longer period then. In the whole country it was several thousand sentences. There were 751 sentences in this district in that period. In 42 percent of those sentences the Court, relying solely on 3553(a) factors, went below the guidelines. If you take out of that total the cases where the Court went below because of 5K1 motions by the government, or because the Court departed downward from the guidelines under the guideline analysis, 56 percent of the remaining cases were below guidelines sentences.

It is, to me, you know, powerful evidence that in a case where you have a person like this person, who has come to this country, made a terrible mistake, committed a crime, gone to jail, suffered greatly because of his own personal circumstances and what it has done to others, who is not likely to repeat what he has done or to commit any further crimes because he has seen what that does, and who is not a danger in any way to society, should he be released today from this courtroom. This is the kind of case that should fit within the majority of those non 5K1 sentence departure cases. And the Court should sentence well below the guidelines; we think, at time served.

About the family and the friends, your Honor, I am going to say no more because I know you've read.

1          But I would like to note one more thing before I sit
2     down.  As your Honor knows, Mr. Cilins has asserted the Fifth
3     Amendment with respect to the financial affidavit that he was
4     requested to give to probation.  As your Honor also knows, I'm
5     sure even without our having provided the authority, which the
6     government had, that the case law in this circuit is pretty
7     powerful that the Fifth Amendment applies to that.  I was
8     surprised to see the government in a footnote state that his
9     declination to provide that affidavit was an attempt to thwart
10    the Court.  I'm certain that your Honor would never dream of
11    holding someone's Fifth Amendment assertion against them in any
12    way in a sentencing, but I did feel that it was important for
13    me to note that I was not happy with the suggestion implied in
14    the government's memorandum.
15         Your Honor, Fred Cilins has enjoyed our hospitality
16    for a long time.  His family, and particularly his children,
17    are desperately in need of him and they have suffered because
18    of what he has done, but they need not suffer anymore, nor
19    should he be punished anymore for what he has done.
20         We ask the Court to sentence him to time served.
21         THE COURT:  Thank you, Mr. Schwartz.
22         Mr. Helou.
23         MR. HELOU:  Thank you, your Honor.
24         Your Honor, the defendant has argued that when he came
25    to the United States he made a mistake.  Those words that he

1  uttered, destroy those documents, we must destroy them now,
2  were not a mistake. Those were the culmination of a year-long
3  effort to interfere with this witness. He's minimized his
4  conduct in that respect. This was not a spur-of-the-moment
5  decision. He met with her several times.
6      He went to two different countries, the United States
7  and Guinea, in an attempt to find her. He also worked with
8  other people to obstruct this investigation. And the fact that
9  he worked with other people, your Honor, comes from his own
10 words, which were recorded on a wiretap, and also his words
11 which were recorded during meetings with the witness he was
12 interfering with. This was a very extensive and complex effort
13 to thwart this investigation. He told the witness that he
14 would use attorneys to hide money that she would receive.
15     He has accepted responsibility, your Honor, but he has
16 not shown remorse.
17     The other issue here, this is not a generic foreigner
18 who commits a crime in the United States. This is a very
19 wealthy defendant. He owns five properties in the United
20 States and co-owns two more. The total worth of those is
21 almost $4 million. In addition to the approximately $2 million
22 in payments that created the guidelines level in this case, he
23 sent $3.6 million into the United States. Most foreign
24 defendants in this country do not have the means that he has to
25 lead a successful life.

1          The other problem with the defendant's wealth in this
2   case, your Honor, is that you have a group we were
3   investigating for allegations that a group of very wealthy
4   people had gone to a very poor country and were trying to take
5   a very valuable asset from that country.  Your Honor, it is sad
6   that the defendant's family and friends will not be able to be
7   with him for whatever amount of time he is incarcerated, but
8   that is a normal consequence of any conviction in a criminal
9   case.  Their loss of their family member is no different than
10  any other defendant's family.
11         One other issue is, although they are overseas, they
12  have the ability to come here to see him.  For many defendants'
13  families, being sent two, three states away can prohibit them
14  from seeing him.
15         Finally, I want to address his failing to provide
16  information to the probation office about his finances.  He
17  does have a Fifth Amendment right to do that.  However, if he
18  exercises that Fifth Amendment right, the Court may consider
19  only the evidence that is in the record about his finances and
20  his ability to afford a fine.  And all the evidence in this
21  case, your Honor, shows that he is very wealthy.
22         If the Court has any additional questions, I'm happy
23  to respond to them.  Otherwise, I submit.
24         THE COURT:  Thank you very much, Mr. Helou.
25         Mr. Schwartz, does your client wish to address the

1     Court before sentence is imposed?
2             MR. SCHWARTZ:  He does, your Honor.  And he would like
3     to make a statement both in his native language and in English.
4             THE COURT:  The statement in his native language will
5     be interpreted for the court reporter and the Court.
6             MR. SCHWARTZ:  Of course.
7             THE COURT:  All right.
8             THE DEFENDANT:  Your Honor, I would like to apologize
9     before this Court for what I have done and for my family, for
10    all the suffering that injured.
11            (In English) I would like to apologize, your Honor, to
12    the Court for what I did and for my family for the pain that I
13    have endured.
14            THE COURT:  The defendant, Frederick Cilins, comes
15    before this Court having pled guilty to obstructing a federal
16    criminal investigation, an offense that strikes at the very
17    foundation of the sound administration of justice.  This Court
18    has reviewed the presentence investigation report.  I adopt the
19    findings of fact in that report as my own and will cause the
20    report to be docketed and filed under seal as part of the
21    record in this case.
22            Turning, first, to the guidelines calculation, in this
23    case the base offense level is calculated with reference to the
24    value of payments involved.  The obstruction involved bribery.
25    And because the value of the payments were more than a million

1  dollars, the total base offense level is 24.

2  Mr. Cilins pled guilty before this Court. He accepted
3  responsibility for his criminal conduct and, accordingly, I
4  grant him a three-level reduction for acceptance. This is his
5  first criminal conviction and his criminal history category is
6  a I. And under the guidelines, with a total offense level of
7  21 and a criminal history category of I, that yields a
8  guideline range of 37 to 46 months of imprisonment, which is
9  also consistent with the parties' plea agreement in this case.

10  Now, turning to the 3553(a) factors, I begin by noting
11  that I have reviewed all of the submissions by the parties in
12  connection with this sentencing. The very nature of
13  Mr. Cilins' offense is an affront to the sound administration
14  of justice. Mr. Cilins sought to obstruct a major criminal
15  investigation into an alleged long-running bribery scheme to
16  obtain billions of dollars of Guinea's mineral wealth. The
17  subjects of that investigation are allegedly wealthy
18  international businessmen, including Mr. Cilins, who had the
19  resources and sophistication to attempt to thwart the
20  investigators.

21  The obstructive conduct here, as the government points
22  out in its submission, was particularly sophisticated and
23  involved several trips to the United States and Guinea, the
24  preparation of fraudulent documents, and efforts to suborn
25  perjury. It's the kind of criminal conduct that screams for

1  general deterrence.

2       Mr. Cilins was determined to do everything he could to
3  scuddle the government's underlying investigation into the
4  alleged bribery of foreign government officials.  Mr. Cilins
5  and other international businessmen who may consider the risks
6  of letting an investigation run its course and make a
7  deliberate decision, as Mr. Cilins did, to obstruct it, need to
8  understand that obstruction of justice is a serious crime for
9  which defendants will face appropriate consequences.

10      Now, this Court understands fully that Mr. Cilins is a
11 French citizen who has been in custody since his arrest in
12 Florida on April 15, 2013.  Through all of the letters that
13 were submitted on his behalf and counsel's argument to the
14 Court, both in his brief and here today, I appreciate
15 Mr. Cilins' family circumstances.

16      I also recognize that the distance between Mr. Cilins
17 and his family makes it extremely difficult for them to have
18 contact.  By all accounts, Mr. Cilins is a devoted family man
19 who is particularly attentive to his children and to those in
20 need around him.  No doubt his absence creates significant
21 hardship for his family.

22      He also appears to be an individual who is revered by
23 many people who are simply acquaintances.  It's difficult for
24 this Court to reconcile his generosity and understanding in his
25 personal life with his calculating and lawless behavior in

1  connection with his obstruction of the government's
2  investigation. Indeed there is a Jekyll & Hyde aspect to
3  Mr. Cilins. On the one hand, it's reported to me that he
4  teaches his children to give their toys to him so that he can
5  provide them to impoverished children in Africa. On the other
6  hand, as the government points out here, he used his
7  sophisticated talents to attempt to fraudulently siphon mineral
8  wealth from the people in the very same countries. It's very
9  difficult to reconcile that kind of conduct.
10         The defendant, as Mr. Schwartz has pointed out, has
11 every right to invoke his Fifth Amendment privilege in
12 connection with the disclosure of his financial assets. This
13 Court can consider those matters of record relating to
14 Mr. Cilins in fashioning certain relief here as part of the
15 judgment, and I will do so in a few moments. But suffice it to
16 say that Mr. Cilins has been involved in very substantial
17 financial transactions over the last several years and, indeed,
18 even in connection with the matters at hand in the case before
19 me.
20         In looking at Mr. Cilins as an individual and all of
21 the circumstances here, this Court believes that a sentence
22 within the guideline range is somewhat more than is necessary
23 in this case to effect the necessary principles, especially the
24 need for both specific and general deterrence and recognition
25 of the gravity of the criminal conduct here which, as I've

said, strikes at the heart of the criminal justice system. And, at the same time, this Court cannot conclude that a sentence as requested by the defendant of time served is sufficient.

So it is against that backdrop that I'm prepared to impose sentence on Mr. Cilins, and I would ask him to stand at this time.

Mr. Cilins, in my remarks I have tried to balance the gravity of your offense with your family circumstances and the facts of your arrest in Florida and your detention here. This kind of conduct warrants a significant term of imprisonment.

It's my judgment, Mr. Cilins, that you be sentenced to a term of 24 months of imprisonment, to be followed by three years of supervised release, subject to all of the standard conditions of supervised release and the special condition that you comply with any and all directives of immigration authorities.

I am going to impose on you the maximum fine permitted under the guidelines of $75,000. I have no doubt that you will be able to pay that fine. I am going to impose a $100 special assessment in connection with the case. And is the government submitting an order of forfeiture?

MR. HELOU: I have it here, your Honor. May I approach the bench?

THE COURT: You may.

1          I will sign an order of forfeiture in connection with
2  the money that was seized that was on your person at the time
3  of your arrest in Florida.
4          This, Mr. Cilins, constitutes the sentence of this
5  Court. I advise you that to the extent you have not previously
6  waived your right to appeal, you have the right to appeal. I
7  advise you further that if you cannot afford counsel, counsel
8  will be provided to you free of cost. You have been ably
9  represented by Mr. Schwartz and his colleagues from Florida
10 throughout the proceedings before me, and I am confident that
11 they will advise you further with respect to your appellate
12 rights.
13         You may be seated.
14         THE COURT: Are there any further applications?
15         MR. HELOU: Your Honor, the government moves to
16 dismiss the outstanding counts in both the indictment and the
17 superseding indictment.
18         THE COURT: The government's application is granted.
19         MR. HELOU: Thank you, your Honor.
20         MR. SCHWARTZ: Your Honor, we would ask that the Court
21 recommend to the Bureau of Prisons that Mr. Cilins serve his
22 sentence at the Moshannon Valley facility in Pennsylvania,
23 which will enable -- and if you could state this in the
24 recommendation, it would be very much appreciated -- his family
25 to be fly directly to New York, without having to change

1  flights, and then drive there.  Thank you.
2          THE COURT:  I will include that recommendation,
3  Mr. Schwartz, on the judgment.
4          Anything further?
5          MR. HELOU:  No, your Honor.
6          MR. SCHWARTZ:  No your Honor.
7          THE COURT:  This matter is concluded.  Have a good
8  afternoon.
9                              o0o