```
       E7PMCILS

 1     UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
 2     ------------------------------x

 3     UNITED STATES OF AMERICA,

 4              v.                                13 Cr. 315 (WHP)

 5     FREDERIC CILINS,

 6                 Defendant.

 7     ------------------------------x
                                                  New York, N.Y.
 8                                                July 25, 2014
                                                  2:15 p.m.
 9

10     Before:

11
                       HON. WILLIAM H. PAULEY III,
12
                                                  District Judge
13

14                           APPEARANCES

15     PREET BHARARA
            United States Attorney for the
16          Southern District of New York
       TAREK HELOU
17     ELISHA KOBRE
            Assistant United States Attorneys
18
       COOLEY LLP
19          Attorneys for Defendant
       BY: WILLIAM SCHWARTZ
20          ANNIKA GOLDMAN
            MICHELLE SMITH
21

22
       ALSO PRESENT:  JOSE VOIGT, Interpreter (French)
23                    CHRISTOPHER MARTINEZ, FBI

24

25
```

1              (Case called)
2              MR. HELOU:  Good afternoon, your Honor, Tarek Helou
3     for the United States.  I'm here at counsel table with
4     Assistant U.S. Attorney Elisha Kobre and FBI Special Agent
5     Chris Martinez.
6              THE COURT:  Good afternoon, Mr. Helou.
7              MR. SCHWARTZ:  Good afternoon, your Honor, William
8     Schwartz from Cooley LLP.  I'm here with my colleague Annika
9     Goldman and with my cocounsel, Michelle Smith.
10             THE COURT:  Good afternoon, Mr. Schwartz.  I note the
11    presence of a French interpreter.  Would you identify yourself
12    for the record.
13             THE INTERPRETER:  Jose Voigt.  Good afternoon, your
14    Honor.
15             THE COURT:  Good afternoon, Ms. Voigt.
16             Please administer the oath to the interpreter.
17             (Interpreter sworn)
18             THE COURT:  Mr. Cilins, are you able to understand
19    what's being said here this afternoon through the French
20    interpreter?
21             THE DEFENDANT:  Yes, your Honor.
22             THE COURT:  Good afternoon.
23             This matter is on for sentencing.  Are the parties
24    ready to proceed?
25             MR. HELOU:  Yes, your Honor.

1             MR. SCHWARTZ:  Defendant is ready, your Honor.

2             THE COURT:  Mr. Schwartz, have you reviewed with your

3    client the presentence investigation report?

4             MR. SCHWARTZ:  I have, your Honor.

5             THE COURT:  Are there any factual matters set forth in

6    the report that you believe warrant modification or correction?

7             MR. SCHWARTZ:  Your Honor, as you may know from

8    reading the report, we objected to certain paragraphs, the

9    background paragraphs on several grounds, not all of which are

10   stated in the report, paragraphs 6 through 12, and the

11   government has informed me that those were merely meant as

12   allegations to show the background to the crime, not anything

13   requiring factual findings.  So we have nothing further.

14            THE COURT:  Very well.

15            Mr. Helou, does the government believe that there are

16   any modifications that need to be made with respect to the

17   facts in the report?

18            MR. HELOU:  No, your Honor.

19            THE COURT:  Mr. Schwartz, do you wish to be heard?

20            MR. SCHWARTZ:  I do, your Honor.

21            If it please the Court, I find sentencing

22   presentations to be the most difficult thing I do as a lawyer,

23   particularly when I have come to know clients as well as I have

24   come to know this client during his long stay in our city.

25            Just at the outset, I have come to know him as the man

1    who is portrayed in the letters that the Court has read, a good
2    and serious man who one can admire.  He has admitted his crime
3    which occurred during three meetings in Jacksonville, Florida
4    in April of 2013.
5              In its submission the government begins its submission
6    with the language that he used in committing the crime.  That's
7    what the crime was.  There is no question about that.  We don't
8    dispute the language.  He did try to obstruct an investigation.
9    He has pleaded guilty to that.  And he is here to be sentenced
10   for that.
11             The question isn't what were the words he used in
12   committing the crime to which he has admitted.  The question
13   is, what is the appropriate sentence for those words and for
14   those actions.
15             As your Honor knows from everything that has gone on,
16   there is an agreed-to guidelines calculation in this case of 37
17   to 46 months.  To date my client has been incarcerated at the
18   MDC for 15 months.  He recently received an evaluation from the
19   MDC which was quite favorable.  They evaluate the people that
20   are there.
21             And one of the things that they said in the evaluation
22   which struck me, knowing him and having read the letters, they
23   said that he is always willing to go the extra mile to help
24   others.  The evaluation said he is always willing to go the
25   extra mile to help others.  So it is clear that even the prison

1  authorities have come to know the man that I've come to know
2  and that is known by his family and his friends.
3         If these 15 months had been his sentence, that he has
4  been serving his sentence and he had received good time, which
5  is clear from the evaluation he would have received, it would
6  have been the equivalent of serving a 17 and a half month
7  sentence, approximately, imposed by the Court.  In our memo we
8  have urged the Court to accept that service in custody as the
9  period of incarceration that is sufficient in this case to
10 serve the ends of justice, and we maintain still, your Honor,
11 that time served is the appropriate sentence.
12        I'm sure that the Court has closely reviewed that memo
13 and, more importantly, I am quite confident that the Court has
14 read the letters, many of them quite moving and extraordinary.
15        By the way, your Honor, as I've learned a little bit
16 in my cultural education in this case, particularly difficult
17 for French nationals to write the kinds of letters we have
18 become accustomed to as Americans to express themselves to a
19 stranger as openly as they have expressed themselves to the
20 Court.  And I think that says something about Mr. Cilins, that
21 they have been willing to bear themselves in this way.
22        I note for the Court that Mr. Cilins' wife, one of his
23 daughters, and his brother are in the courtroom today and that
24 his youngest daughter, Emma, whom I am sure your Honor has read
25 about, is close to the courthouse awaiting your Honor's

1   decision.

2           I am not going to reargue or repeat in any detail what
3   we have said in our memorandum other than to emphasize that, as
4   the letters show, as I have come to learn, as the MDC
5   authorities have themselves come to learn, Fred Cilins is a
6   decent and beloved man with powerful ties to his family and to
7   his friends.  He has, because of those ties, suffered greatly
8   being thousands of miles away from them, and I think, more
9   importantly, has suffered even more greatly because of his
10  knowledge of what he has done to them and, in particular, to
11  his family, as your Honor has read.

12          It's been very severe punishment.  I'm not at all
13  trying to suggest that there is anything inappropriate about
14  the fact that he has been incarcerated.  This is a crime, I
15  think he would agree, for which incarceration is very
16  appropriate.  All of us who practice in the criminal justice
17  system need to know that it is untainted.

18          But he has been punished and punished greatly.  And
19  it's not a case, as the government and I understand and
20  expected them to say in their memorandum what they said, but
21  this is not a case of just a generic foreigner.  Yes, we know
22  our prisons are filled, sadly, with foreign nationals.  Not a
23  case of a generic foreigner whose family is suffering and can
24  be viewed, that happens to everybody.  It happens to every
25  prisoner.

1            But we think in this case we have presented the Court
2   with particulars that demonstrate that there is something about
3   Fred Cilins that requires the Court to take into account
4   punishment he has received as a result of what he's done to his
5   family and to account for that in the sentence that the Court
6   gives.
7            We think that, as I said, time served and, at a
8   minimum, a sentence below the guidelines is what's warranted.
9            We all know that since Booker the law has been that
10  the guidelines are advisory.  What's interesting, your Honor,
11  is the practice of the courts in looking to the guidelines and
12  how they have looked at them.  And I think for this case what's
13  particularly interesting is how the guidelines have played out
14  in this district, after Booker.
15           Two days ago the sentencing commission released its
16  latest report.  And it does an analysis of the United States
17  courts, district courts, district by district, in extraordinary
18  details.  It's the first time I ever looked at one of these
19  things.  I was actually amazed at the work that goes into it.
20  I looked at what is happening here, because this is the
21  courthouse that I had to appear in this week and this is the
22  courthouse that I spend most of my life in.
23           If the Court will permit just a couple of statistics.
24  And we are talking about the period from October 2013 through
25  March 2014, the last quarter of the calendar year of 2013 and

1   the first quarter of the calendar year of 2014.  If you look at
2   all sentences in this district, and there were several
3   thousand -- 751 sentences, a longer period then.  In the whole
4   country it was several thousand sentences.  There were 751
5   sentences in this district in that period.  In 42 percent of
6   those sentences the Court, relying solely on 3553(a) factors,
7   went below the guidelines.  If you take out of that total the
8   cases where the Court went below because of 5K1 motions by the
9   government, or because the Court departed downward from the
10  guidelines under the guideline analysis, 56 percent of the
11  remaining cases were below guidelines sentences.
12          It is, to me, you know, powerful evidence that in a
13  case where you have a person like this person, who has come to
14  this country, made a terrible mistake, committed a crime, gone
15  to jail, suffered greatly because of his own personal
16  circumstances and what it has done to others, who is not likely
17  to repeat what he has done or to commit any further crimes
18  because he has seen what that does, and who is not a danger in
19  any way to society, should he be released today from this
20  courtroom.  This is the kind of case that should fit within the
21  majority of those non 5K1 sentence departure cases.  And the
22  Court should sentence well below the guidelines; we think, at
23  time served.
24          About the family and the friends, your Honor, I am
25  going to say no more because I know you've read.

1            But I would like to note one more thing before I sit
2    down.  As your Honor knows, Mr. Cilins has asserted the Fifth
3    Amendment with respect to the financial affidavit that he was
4    requested to give to probation.  As your Honor also knows, I'm
5    sure even without our having provided the authority, which the
6    government had, that the case law in this circuit is pretty
7    powerful that the Fifth Amendment applies to that.  I was
8    surprised to see the government in a footnote state that his
9    declination to provide that affidavit was an attempt to thwart
10   the Court.  I'm certain that your Honor would never dream of
11   holding someone's Fifth Amendment assertion against them in any
12   way in a sentencing, but I did feel that it was important for
13   me to note that I was not happy with the suggestion implied in
14   the government's memorandum.
15           Your Honor, Fred Cilins has enjoyed our hospitality
16   for a long time.  His family, and particularly his children,
17   are desperately in need of him and they have suffered because
18   of what he has done, but they need not suffer anymore, nor
19   should he be punished anymore for what he has done.
20           We ask the Court to sentence him to time served.
21           THE COURT:  Thank you, Mr. Schwartz.
22           Mr. Helou.
23           MR. HELOU:  Thank you, your Honor.
24           Your Honor, the defendant has argued that when he came
25   to the United States he made a mistake.  Those words that he

1    uttered, destroy those documents, we must destroy them now,
2    were not a mistake.  Those were the culmination of a year-long
3    effort to interfere with this witness.  He's minimized his
4    conduct in that respect.  This was not a spur-of-the-moment
5    decision.  He met with her several times.
6              He went to two different countries, the United States
7    and Guinea, in an attempt to find her.  He also worked with
8    other people to obstruct this investigation.  And the fact that
9    he worked with other people, your Honor, comes from his own
10   words, which were recorded on a wiretap, and also his words
11   which were recorded during meetings with the witness he was
12   interfering with.  This was a very extensive and complex effort
13   to thwart this investigation.  He told the witness that he
14   would use attorneys to hide money that she would receive.
15             He has accepted responsibility, your Honor, but he has
16   not shown remorse.
17             The other issue here, this is not a generic foreigner
18   who commits a crime in the United States.  This is a very
19   wealthy defendant.  He owns five properties in the United
20   States and co-owns two more.  The total worth of those is
21   almost $4 million.  In addition to the approximately $2 million
22   in payments that created the guidelines level in this case, he
23   sent $3.6 million into the United States.  Most foreign
24   defendants in this country do not have the means that he has to
25   lead a successful life.

1    The other problem with the defendant's wealth in this
2  case, your Honor, is that you have a group we were
3  investigating for allegations that a group of very wealthy
4  people had gone to a very poor country and were trying to take
5  a very valuable asset from that country.  Your Honor, it is sad
6  that the defendant's family and friends will not be able to be
7  with him for whatever amount of time he is incarcerated, but
8  that is a normal consequence of any conviction in a criminal
9  case.  Their loss of their family member is no different than
10 any other defendant's family.
11   One other issue is, although they are overseas, they
12 have the ability to come here to see him.  For many defendants'
13 families, being sent two, three states away can prohibit them
14 from seeing him.
15   Finally, I want to address his failing to provide
16 information to the probation office about his finances.  He
17 does have a Fifth Amendment right to do that.  However, if he
18 exercises that Fifth Amendment right, the Court may consider
19 only the evidence that is in the record about his finances and
20 his ability to afford a fine.  And all the evidence in this
21 case, your Honor, shows that he is very wealthy.
22   If the Court has any additional questions, I'm happy
23 to respond to them.  Otherwise, I submit.
24   THE COURT:  Thank you very much, Mr. Helou.
25   Mr. Schwartz, does your client wish to address the

1  Court before sentence is imposed?

2      MR. SCHWARTZ:  He does, your Honor.  And he would like

3  to make a statement both in his native language and in English.

4      THE COURT:  The statement in his native language will

5  be interpreted for the court reporter and the Court.

6      MR. SCHWARTZ:  Of course.

7      THE COURT:  All right.

8      THE DEFENDANT:  Your Honor, I would like to apologize

9  before this Court for what I have done and for my family, for

10 all the suffering that injured.

11     (In English) I would like to apologize, your Honor, to

12 the Court for what I did and for my family for the pain that I

13 have endured.

14     THE COURT:  The defendant, Frederick Cilins, comes

15 before this Court having pled guilty to obstructing a federal

16 criminal investigation, an offense that strikes at the very

17 foundation of the sound administration of justice.  This Court

18 has reviewed the presentence investigation report.  I adopt the

19 findings of fact in that report as my own and will cause the

20 report to be docketed and filed under seal as part of the

21 record in this case.

22     Turning, first, to the guidelines calculation, in this

23 case the base offense level is calculated with reference to the

24 value of payments involved.  The obstruction involved bribery.

25 And because the value of the payments were more than a million

1  dollars, the total base offense level is 24.

2        Mr. Cilins pled guilty before this Court.  He accepted
3  responsibility for his criminal conduct and, accordingly, I
4  grant him a three-level reduction for acceptance.  This is his
5  first criminal conviction and his criminal history category is
6  a I.  And under the guidelines, with a total offense level of
7  21 and a criminal history category of I, that yields a
8  guideline range of 37 to 46 months of imprisonment, which is
9  also consistent with the parties' plea agreement in this case.

10        Now, turning to the 3553(a) factors, I begin by noting
11  that I have reviewed all of the submissions by the parties in
12  connection with this sentencing.  The very nature of
13  Mr. Cilins' offense is an affront to the sound administration
14  of justice.  Mr. Cilins sought to obstruct a major criminal
15  investigation into an alleged long-running bribery scheme to
16  obtain billions of dollars of Guinea's mineral wealth.  The
17  subjects of that investigation are allegedly wealthy
18  international businessmen, including Mr. Cilins, who had the
19  resources and sophistication to attempt to thwart the
20  investigators.

21        The obstructive conduct here, as the government points
22  out in its submission, was particularly sophisticated and
23  involved several trips to the United States and Guinea, the
24  preparation of fraudulent documents, and efforts to suborn
25  perjury.  It's the kind of criminal conduct that screams for

general deterrence.

      Mr. Cilins was determined to do everything he could to scuddle the government's underlying investigation into the alleged bribery of foreign government officials. Mr. Cilins and other international businessmen who may consider the risks of letting an investigation run its course and make a deliberate decision, as Mr. Cilins did, to obstruct it, need to understand that obstruction of justice is a serious crime for which defendants will face appropriate consequences.

      Now, this Court understands fully that Mr. Cilins is a French citizen who has been in custody since his arrest in Florida on April 15, 2013. Through all of the letters that were submitted on his behalf and counsel's argument to the Court, both in his brief and here today, I appreciate Mr. Cilins' family circumstances.

      I also recognize that the distance between Mr. Cilins and his family makes it extremely difficult for them to have contact. By all accounts, Mr. Cilins is a devoted family man who is particularly attentive to his children and to those in need around him. No doubt his absence creates significant hardship for his family.

      He also appears to be an individual who is revered by many people who are simply acquaintances. It's difficult for this Court to reconcile his generosity and understanding in his personal life with his calculating and lawless behavior in

connection with his obstruction of the government's investigation. Indeed there is a Jekyll & Hyde aspect to Mr. Cilins. On the one hand, it's reported to me that he teaches his children to give their toys to him so that he can provide them to impoverished children in Africa. On the other hand, as the government points out here, he used his sophisticated talents to attempt to fraudulently siphon mineral wealth from the people in the very same countries. It's very difficult to reconcile that kind of conduct.

The defendant, as Mr. Schwartz has pointed out, has every right to invoke his Fifth Amendment privilege in connection with the disclosure of his financial assets. This Court can consider those matters of record relating to Mr. Cilins in fashioning certain relief here as part of the judgment, and I will do so in a few moments. But suffice it to say that Mr. Cilins has been involved in very substantial financial transactions over the last several years and, indeed, even in connection with the matters at hand in the case before me.

In looking at Mr. Cilins as an individual and all of the circumstances here, this Court believes that a sentence within the guideline range is somewhat more than is necessary in this case to effect the necessary principles, especially the need for both specific and general deterrence and recognition of the gravity of the criminal conduct here which, as I've

1   said, strikes at the heart of the criminal justice system.
2   And, at the same time, this Court cannot conclude that a
3   sentence as requested by the defendant of time served is
4   sufficient.
5          So it is against that backdrop that I'm prepared to
6   impose sentence on Mr. Cilins, and I would ask him to stand at
7   this time.
8          Mr. Cilins, in my remarks I have tried to balance the
9   gravity of your offense with your family circumstances and the
10  facts of your arrest in Florida and your detention here.  This
11  kind of conduct warrants a significant term of imprisonment.
12         It's my judgment, Mr. Cilins, that you be sentenced to
13  a term of 24 months of imprisonment, to be followed by three
14  years of supervised release, subject to all of the standard
15  conditions of supervised release and the special condition that
16  you comply with any and all directives of immigration
17  authorities.
18         I am going to impose on you the maximum fine permitted
19  under the guidelines of $75,000.  I have no doubt that you will
20  be able to pay that fine.  I am going to impose a $100 special
21  assessment in connection with the case.  And is the government
22  submitting an order of forfeiture?
23         MR. HELOU:  I have it here, your Honor.  May I
24  approach the bench?
25         THE COURT:  You may.

1          I will sign an order of forfeiture in connection with
2   the money that was seized that was on your person at the time
3   of your arrest in Florida.
4          This, Mr. Cilins, constitutes the sentence of this
5   Court.  I advise you that to the extent you have not previously
6   waived your right to appeal, you have the right to appeal.  I
7   advise you further that if you cannot afford counsel, counsel
8   will be provided to you free of cost.  You have been ably
9   represented by Mr. Schwartz and his colleagues from Florida
10  throughout the proceedings before me, and I am confident that
11  they will advise you further with respect to your appellate
12  rights.
13         You may be seated.
14         THE COURT:  Are there any further applications?
15         MR. HELOU:  Your Honor, the government moves to
16  dismiss the outstanding counts in both the indictment and the
17  superseding indictment.
18         THE COURT:  The government's application is granted.
19         MR. HELOU:  Thank you, your Honor.
20         MR. SCHWARTZ:  Your Honor, we would ask that the Court
21  recommend to the Bureau of Prisons that Mr. Cilins serve his
22  sentence at the Moshannon Valley facility in Pennsylvania,
23  which will enable -- and if you could state this in the
24  recommendation, it would be very much appreciated -- his family
25  to be fly directly to New York, without having to change

1  flights, and then drive there.  Thank you.
2              THE COURT:  I will include that recommendation,
3  Mr. Schwartz, on the judgment.
4              Anything further?
5              MR. HELOU:  No, your Honor.
6              MR. SCHWARTZ:  No your Honor.
7              THE COURT:  This matter is concluded.  Have a good
8  afternoon.
9                               o0o